**Michael RILEY**

v.

**LETTER CARRIERS LOCAL NO. 380, and National Association of Letter Carriers, and United States Postal Service.**

**Appeal of Michael RILEY, in No. 81–1356.**

**Appeal of UNITED STATES POSTAL SERVICE, in No. 81–1505.**

**Nos. 81–1356, 81–1505.**

United States Court of Appeals, Third Circuit.

Argued Oct. 15, 1981.

Decided Dec. 31, 1981.

Rehearing and Rehearing In Banc Denied Jan. 26, 1982.

---

Richard N. Shaine (argued), Stark & Stark, Lawrenceville, N. J., for Michael Riley; Joel S. Trosch, Asst. Gen. Counsel, David Fishman, U. S. Postal Service, Washington, D. C., of counsel.

William W. Robertson, U. S. Atty., Maryanne T. Desmond, Chief of Appeals, Asst. U. S. Atty., Jerome B. Simandle (argued), Asst. U. S. Atty., Trenton, N. J., for U. S. Postal Service.

Bruce H. Simon, Keith E. Secular, Franklin K. Moss (argued), Cohen, Weiss & Simon, New York City, and John M. Donnelly, Sterns, Herbert & Weinroth, Trenton, N. J., for Letter Carriers Local No. 380 and National Association of Letter Carriers.

Before HUNTER and WEIS, Circuit Judges, and VAN DUSEN, Senior Circuit Judge.

### OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

In No. 81–1356, the appellant Michael Riley, the plaintiff below, appeals from a final order of the district court filed April 14, 1980, granting summary judgment to the defendants, Letter Carriers Local No. 380 and the National Association of Letter Carriers (hereinafter "Unions"); and from a final order filed January 14, 1981, granting summary judgment to the defendant, United States Postal Service, based on the statute of limitations. In No. 81–1505, cross-appellant United States Postal Service, a defendant below, appeals from an order of the district court, also filed April 14, 1980, denying its motion for summary judgment based on the substantive issue. This court has jurisdiction under 28 U.S.C. § 1291.[1]

We will affirm in No. 81–1356. Because of our resolution of this appeal, the cross-appeal in No. 81–1505 will be dismissed as moot.

### I.

Beginning in August 1970 Riley was employed as a part-time letter carrier by the defendant, United States Postal Service (USPS), at its Trenton, New Jersey, facility. He was represented for collective bargaining purposes by the defendant unions. On May 5, 1972, Riley was arrested, and was thereafter indicted, for an offense for which a term of imprisonment could be imposed. Under the provisions of the collective bargaining agreement, this constituted grounds for immediate discharge.[2] On May 11, 1972, Riley was informed by letter that he would be discharged effective May 12, 1972. Later on May 11, Riley contacted his Local Union president, Lenihan, and the two met with USPS representative Masterson. Riley asserts, and the dis-

---

1. We have § 1291 jurisdiction over the cross-appeal since the April 4, 1980, order appealed from, denying the motion for summary judgment, became final and appealable when the January 14, 1981, order disposed of all claims and parties.

2. Article XVI, § 3 of the collective bargaining agreement, *reprinted at* 484a–485a, provided:
   "SECTION 3. In the case of suspensions of more than thirty (30) days, or of discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of his case has been had either by settlement with the Union or through exhaustion of the grievance-arbitra-

tion procedure. A preference eligible who chooses to appeal his suspension of more than thirty (30) days or his discharge to the Civil Service Commission rather than through the grievance-arbitration procedure shall remain on the rolls (non-pay status) until disposition of his case has been had either by settlement or through exhaustion of his Civil Service appeal. *When there is reasonable cause to believe an employee guilty of a crime for which a sentence of imprisonment can be imposed, the advance notice requirement shall not apply and such an employee may be immediately removed from pay status.*"
(Emphasis added.)
   The parties and the district court are in agreement that Riley's arrest and indictment subjected him to immediate discharge.

trict court presumed for purposes of this summary judgment motion,[3] that Lenihan and Masterson agreed to hold the grievance in "abeyance" until the criminal charges were determined. Riley subsequently notified USPS that he would pursue his grievance under the collective bargaining agreement, rather than under the Veterans' Preference Act.[4] This letter was acknowledged on May 18, 1972, in a letter from USPS representative Schiller which stated that "the grievance appeal dated May 16, 1972" was denied. Riley then showed this letter to Lenihan who, Riley asserts, assured him that he was protected by the "abeyance agreement." On June 13, 1972, Riley received an official notice of termination from USPS. He again went to Lenihan, who took no action, purportedly in reliance upon the abeyance agreement.

In the summer of 1974, the criminal charges against Riley were dropped. He contacted Lenihan, who reinstituted the grievance procedure. USPS denied the abeyance agreement and contended the grievance was untimely at each stage.[5] The union then prepared to take the matter to arbitration, but Riley chose instead to pursue his remedies under the Veterans' Preference Act. There again, his claims were rejected as untimely. Riley also filed unfair labor practice charges with the National Labor Relations Board, but the Regional Director declined to issue a complaint.

On January 5, 1978, Riley brought this action against the defendant unions in the New Jersey state court, alleging that they had breached their duty of fair representation in that they had "willfully, wantonly and recklessly" (count 1) and "negligently and carelessly" (count 2) failed to pursue available remedies on his behalf. On June 26, 1978, the defendant unions removed the case to the United States District Court. On October 31, 1978, Riley amended his complaint, naming the USPS as an additional defendant and alleging breach of the collective bargaining agreement and the abeyance agreement. All of the defendants then answered and moved for summary judgment.

On March 4, 1980, the district court granted the motion of the defendant unions, holding that, as a matter of law, the unions had not breached their duty of fair representation to Riley. At the same time, the court denied the motion of USPS on the ground that the breach of the abeyance agreement, if proved, would amount to a repudiation of the grievance procedure and thus would be actionable even absent a breach of the union's duty of fair representation. *Riley v. Letter Carriers Local No. 380*, 485 F.Supp. 980 (D.N.J.1980). In a subsequent opinion, the district court denied USPS's motion for reconsideration of its decision. *Riley v. Letter Carriers Local No. 380*, 493 F.Supp. 342 (D.N.J.1980).

On January 14, 1981, the district court, based upon its bench opinion of January 5, 1981 (167a–177a), granted USPS's motion for summary judgment, holding that the abeyance agreement was breached, if at all, by June 1972 and, therefore, that the six-year statute of limitations [6] on Riley's cause of action had run before the amended complaint was filed in October 1978.

These appeals followed.

---

3. We have recited the plaintiff's version of the facts on this appeal.

4. Under Article XVI, § 6 of the collective bargaining agreement, Riley could choose either of these avenues of appeal. Choice of one alternative precludes resort to the other. *See* 485a.

5. The collective bargaining agreement requires a "Step 1" grievance to be brought "within five (5) days of when the employee or Union has learned or may reasonably have been expected to have learned of its cause." Art. XV, § 2, Step 1, *reprinted at* 483a. Progression through subsequent stages of the grievance machinery is governed by similar time limits. "The failure of the aggrieved party or his representative to present the grievance within the prescribed time limits of the steps of the procedure, including arbitration, shall be considered as a waiver of the grievance." *Id.*, Step 4, *reprinted at* 484a.

6. The district court found, and Riley does not dispute, that the applicable statute of limitations is the six-year provision of 28 U.S.C. § 2401(a) (1976).

## II.

It is a fundamental axiom of federal labor law that a union's status as the exclusive bargaining representative of an employee carries with it "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 367, 11 L.Ed.2d 370 (1964). As the Supreme Court held in *Vaca*, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 386 U.S. at 190, 87 S.Ct. at 916. In the context of a grievance proceeding, the rule is "that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion. . . ." *Id.* at 191, 87 S.Ct. at 917. While the application of the "perfunctory" standard has proven difficult over time, we have recently made clear that whatever it may mean in other circumstances, "[m]ere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'" *Findley v. Jones Motor Freight, Etc.*, 639 F.2d 953, 960 & n.2 (3d Cir. 1981). *See Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir. 1970). What is required is a showing of actual bad faith or arbitrary conduct. The fact that trained counsel would have avoided the error or pursued a different strategy is not enough. *Findley v. Jones Motor Freight, Etc., supra*, 639 F.2d at 955, 961.

In this case, assuming as we must that an abeyance agreement existed, the acts constituting the alleged breach of the duty of fair representation were Lenihan's failure to recognize the communications from USPS of May 18, 1972, and June 13, 1976, as constituting breaches of that agreement.[7] In evaluating these facts in the light most favorable to the plaintiff, the district court concluded:

> "Lenihan's failure to respond to the letters constitutes at most negligence. Since USPS had honored abeyance agreements in the past, it was not unreasonable for Lenihan to believe that this agreement would also be honored."

485 F.Supp. at 983. Lenihan exhibited no hostility toward Riley nor did he or the union discriminate against Riley in any way. The district court specifically found that:

> "Riley's sole dissatisfaction with the Union is the fact that he was not reinstated with USPS. Riley has not complained that the Union's conduct toward him was in bad faith or arbitrary."

*Id.* Lenihan did not simply "go through the motions" in pursuing Riley's grievance. Rather, he pursued what he thought to be the proper and prudent strategy of seeking and relying upon the abeyance agreement.[8] Lenihan's "mistake" was just that—a mistaken, but by no means arbitrary or bad faith, interpretation of the May 18 and June 13 letters from USPS. As we will discuss in part III of this opinion, those letters constituted notice to Riley and Lenihan that if any abeyance agreement existed it was presently being breached. Nonetheless, accepting as we must Riley's view of the history of abeyance agreements at this facility (218a & 231a–233a), Lenihan had an understandable, non-discriminatory, good faith reason for failing to act—reliance upon past practice. It was precisely this sort of reliance, even when mistaken, which

---

7. It is sufficient to note at this point that we agree with the district court's conclusion that the abeyance agreement was breached, if at all, in 1972 and that the time limits on Riley's grievance rights, as well as the statute of limitations on his action against the USPS, began to run at that time. This issue is discussed more fully in part III of this opinion.

8. As the district court noted, it seems clear that this was the only viable course of action. Since the collective bargaining agreement permits summary dismissal in cases such as this, any attempt to grieve the discharge was bound to fail. *See* 485 F.Supp. at 983.

was referred to in *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir. 1981), where the court stated:

"If the district court concludes that the bargaining representative's failure to timely file the grievance statement was due to reliance on the prevailing practice of freely granted extensions, that will be sufficient to relieve the union from liability.[2] Such conduct does not amount to the arbitrariness which *Ruzicka I* held will constitute a breach of the duty of fair representation.[3] Nor does it amount to the perfunctory calculation of a 'non-grievance' as in *Williams v. Teamsters Local Union No. 984*, 625 F.2d 138 (6th Cir. 1980). Concomitantly, it does not equal the inept handling of a grievance by a union ignorant of the contract provisions relevant to the case as in *Milstead v. International Brotherhood of Teamsters*, 580 F.2d 232 (6th Cir. 1978). In relying on a past practice, a union's omission is based on a wholly relevant consideration, is not intended to harm its member, and is not the type of arbitrariness which reflects reckless disregard for the rights of the individual employee. Such conduct, at times, manifests no more than ordinary negligence and we cannot hold a union liable for breach of the duty of fair representation based upon simple negligence.

---

"2. The Supreme Court has recognized the concept of past practice as an important principle of contract application. *United Steelworkers of America v. [Warrior] & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). *See also NLRB v. Northeast Oklahoma City Mfg. Co.*, 631 F.2d 669, 676 (10th Cir. 1980), *quoting Pekar v. Local 181 Int'l Union of United Brewery*, 311 F.2d 628, 636 (6th Cir. 1962), *cert. denied*, 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); *Oakland Press Co. v. NLRB*, 606 F.2d 689, 691 (6th Cir. 1979).

"3. An arbitrary decision is one which arises from caprice or is without reason. In rejecting bad faith as an essential element of an unfair representation case, *Ruzicka I* recognized that

9. Therefore, the indication in the pretrial order in this case that the statute of limitations defense had been abandoned is of no significance

the latter definition of arbitrariness may apply to unfair representation claims."

*Id.* at 1211–12 & n.2 & 3.

It is clear, therefore, that, accepting the facts alleged in the light most favorable to the plaintiff, Lenihan's actions were certainly mistaken, and possibly negligent, but cannot be said to have been arbitrary, discriminatory or in bad faith so as to constitute a breach of the duty of fair representation. Consequently, the decision of the district court granting the defendant unions' motions for summary judgment must be affirmed.

### III.

As a preliminary matter, there is no dispute here that the statute of limitations applicable to Riley's claim against the USPS is the six-year provision contained in 28 U.S.C. § 2401(a) (1976). Similarly, there is no dispute that this limitation period may not be waived or abandoned by an attorney for the Government, for to do so would amount to waiving the sovereign immunity of the United States. *See United States v. Sams*, 521 F.2d 421, 429 (3d Cir. 1975).[9] The sole issue is whether the abeyance agreement was breached and plaintiff's cause of action accrued in May or June of 1972, as the district court found, or in May of 1974, as the plaintiff asserts. We agree with the district court that the abeyance agreement was breached, if at all, by the May 18, 1972, and June 13, 1972, letters from the USPS indicating that Riley was being discharged from employment and, thus, that the six-year statute of limitations expired, at the latest, on June 13, 1978—nearly four and one-half months before Riley filed his amended complaint against the USPS.

Riley argues (Br. 20–24) that the abeyance agreement, by its terms, could not have been breached until the criminal charges against him were resolved in 1974 and that the action of the USPS in 1972 constituted at most an anticipatory repudiation of the agreement which would not

(*see* 27a). The USPS clearly raised the statute as an affirmative defense in its answer to the amended complaint (*see* 23a).

start the statute running. While he nowhere specifically frames his argument in these terms, this position necessarily means that it is Riley's contention that the substance of the abeyance agreement was that the USPS could discharge him entirely, rather than simply remove him from pay status, and presumably would be required to permit him to grieve his discharge and request reinstatement if and when the criminal charges were resolved. There is absolutely nothing in Riley's submission in opposition to the motion for summary judgment to support this argument and, as we will discuss, it is contrary both to the testimony that was presented and to the clear language of the collective bargaining agreement.

As a starting point, the collective bargaining agreement explicitly provides that "the employee shall remain on the rolls (non-pay status) until disposition of his case has been had either by settlement with the Union or through exhaustion of the grievance-arbitration procedure."[10] As noted above, the collective bargaining agreement also provides for certain time limits on the filing of grievances and their prosecution through the various stages of the adjustment process.[11] It was Lenihan's own testimony in his deposition, made a part of the record in this appeal, that the abeyance agreements entered into by the union and the USPS in the past related specifically *to the time limits for filing the grievance* and did not involve a waiver of the requirement that a grievant be kept on the rolls until final resolution of his grievance (218a–219a & 231a–232a). Riley makes no specific contention and offers no evidence that the alleged agreement in this case was any different. It was again Lenihan's testimony (231a–232a), and is the only reasonable conclusion given the structure of the collective bargaining agreement, that the purpose of these agreements was to suspend the running of the contractual time limits to allow informal resolution of disputes without resort to the grievance machinery. This in turn compels the conclusion that the abeyance agreement in this case, if it existed, must have provided that Riley would remain on non-pay status with the contractual time limits for filing a grievance suspended until the criminal charges were resolved. It is, therefore, clear that the agreement was breached, if at all, when the USPS removed Riley from non-pay status by final discharge on June 13, 1972. Riley himself testified that it was his understanding of the June 13 letter that he "had been completely removed from the Post Office" (270a–272a) and the district court found as an undisputed fact that Riley had that understanding and communicated it to Lenihan (170a–171a; 485 F.Supp. at 982). That Lenihan failed to perceive what was happening or mistakenly interpreted the May 18 and June 13 letters as of no significance may have been, as the district court observed, negligence on his part. *See* 485 F.Supp. at 983. The letters were, however, and notwithstanding any negligence, sufficient notice to both Riley and the union that the abeyance agreement, if it existed, had been breached, that their cause of action had accrued, and that the statute of limitations was running.[12]

10. Article XVI, § 3, *reprinted at* 484a–485a. Section 3 is set forth in its entirety in note 2 *supra*.

11. *See* note 5 *supra*.

12. Contrary to the argument of the dissent, we do not believe that the district court's conclusions are inconsistent. Both the March 4, 1980, and January 5, 1981, opinions held that the May 18 and June 13 letters from USPS were sufficient notice to Riley and the union that the abeyance agreement, if it existed, was presently being breached. The March 4 opinion then went on to find that, in light of past practice, Lenihan's failure to recognize the breach, while possibly negligent, was not arbitrary, perfunctory, or in bad faith so as to constitute a breach of the duty of fair representation. 485 F.Supp. at 983. There is no inconsistency in this—there are simply two different standards. A litigant may find his claim time-barred by negligently failing to file a timely complaint. However, the law is clear that mere negligence does not constitute a breach of the duty of fair representation. *Findley v. Jones Motor Freight, Etc., supra*, 639 F.2d at 960 & n.2.

Far from leaving an employee without a remedy in such a situation, the gap between these two standards simply requires the employee to protect himself prospectively by exercising

Even though the provisions of the collective bargaining agreement make clear that an attempt to grieve the merits of Riley's discharge would have been fruitless at the time the abeyance agreement was purportedly breached,[13] he had a clear and effective remedy at that time. Under Article XV, § 1 & § 2, Step 4, para. 5 of the collective bargaining agreement (*see* 483a–484a), any dispute as to the interpretation of, or a purported breach of, the collective bargaining agreement is subject to the contractual grievance procedure. The district court correctly held that the abeyance agreement, if it existed, is properly characterized as an amendment to the collective bargaining agreement. 485 F.Supp. at 984. Thus, the union's proper course of action in the face of the June 13 letter would have been to grieve the breach of the abeyance agreement and, ultimately, to seek an arbitration award specifically enforcing it. This grievance would have been wholly unrelated to, and not influenced by, the merits of Riley's discharge.[14]

### IV.

For the foregoing reasons, the April 14, 1980, judgment of the district court, granting summary judgment to the defendant unions, and the January 14, 1981, judgment of the district court, granting summary judgment to the defendant USPS, will be affirmed.

Because of our decision on those issues, the appeal of the USPS from the April 14, 1980, judgment of the district court, denying its motion for summary judgment, will be dismissed as moot.

The costs will be paid by the appellant in No. 81–1356. The parties will bear their own costs in No. 81–1505.

HUNTER, Circuit Judge, dissenting:

Because we believe that this case should not have been decided on summary judgment, we dissent.

The trial court stated, in granting the unions' motion for summary judgment, that

Lenihan's [the union representative's] failure to respond to the letters constitutes at most negligence. Since USPS had honored abeyance agreements in the past, it was not unreasonable for Lenihan to believe that this agreement would also be honored.

485 F.Supp. at 983. However, in his opinion granting judgment for the USPS on statute of limitations grounds, the trial court stated that "[i]n short, USPS' action demonstrated that it was breaching the oral abeyance agreement as of that date, June 13, 1972." Appendix at 175a.

care in the selection and oversight of his bargaining representatives or requires the aggrieved employee to rely on his internal union remedies. In this case, the district court noted in passing that such internal remedies existed and that Riley had declined to pursue them. *See* 485 F.Supp. at 982.

In addition, we cannot agree with the position advanced in the dissent that the language it quoted from *Findley*, when applied to the facts of this case, makes summary judgment inappropriate. This case does not involve a "complete disregard in assessing the merits of [a] grievance" such as was referred to by the court in *Findley*. Here, the union in fact assessed the merits of the grievance and, as the district court found, took the reasonable step of seeking an abeyance agreement. Further, upon receiving the May 18 and June 13 letters from USPS, Lenihan again considered—not ignored as the dissent contends—the situation and made a good faith, although incorrect,

judgment that the abeyance agreement was in effect. Again, this may have been negligence but clearly was not the bad faith or arbitrary conduct referred to in *Findley*.

13. *See* 485 F.Supp. at 983; note 2 and accompanying text *supra*.

14. Because our resolution of this issue renders moot the appeal in No. 81–1505, we do not have occasion to reach the arguments of the USPS that the district court erred in denying its first motion for summary judgment. We need not comment on our approval or rejection of the district court analysis that the breach of the abeyance agreement, if proved, would constitute a repudiation of the grievance procedure so as to give Riley a claim against the USPS even absent proof of a breach of the duty of fair representation by the union. *See* 493 F.Supp. at 343–45.

The above two quotations reveal a discrepancy. On the one hand, the USPS' actions were *insufficient* to alert a trained union representative that the USPS was breaching its abeyance agreement (assuming there was one), and the union representative was entitled, even after June 13, 1972, to rely on the abeyance agreement. On the other hand, the USPS' actions were *sufficient* to alert a union member that the USPS was breaching its abeyance agreement, and the member was not entitled to rely either on the abeyance agreement or on his representative.

The majority, by accepting this discrepancy and affirming despite it, establishes a double standard. According to the majority, it was "not unreasonable" for Lenihan, the union representative, to fail to realize that the abeyance agreement had been breached. At the same time, the breach was so clear that the union member should have known of the breach and taken appropriate action—despite the reassurances of the union representative. Either Lenihan failed to recognize the breach as a breach, which was arguably worse than "mere negligence," given the majority's ruling that Riley should have known of the breach, or the union representative recognized the breach as such and recklessly failed to take any action to protect Riley's future grievance.

In *Findley v. Jones Motor Freight,* 639 F.2d 953, 960 (3d Cir. 1981), which was decided while this case was on appeal, we stated that "[c]ertain acts or omissions by a union may in a proper case support a finding that the grievance was prosecuted in a perfunctory manner." Plaintiff there argued that the union's handling of the grievance proceedings had been deficient, in that the union had failed to have certain witnesses present, neglected avenues of investigation, and failed to consult adequately with plaintiff. We concluded that plaintiff's allegations in *Findley,* which concerned the *manner* in which the grievance proceedings had been conducted (and not *whether* a grievance had been prosecuted at all beyond the first stage), did not amount to a breach of the union's duty of fair representation.

In this case Lenihan failed to take any action at all when the abeyance agreement was breached. Lenihan may well have represented Riley adequately up to the time of the breach. However, that Riley's grievance was adequately pursued initially does not mean that Lenihan could cease taking any action to protect Riley's rights when the need to act arose. Either Lenihan failed to act in the face of an obvious breach, or he failed to recognize a breach so obvious that Riley has been denied his day in court because of his (Riley's) failure to act despite his union representative's reassurances.[1]

I would reverse the grant of summary judgment and remand for development of the facts and reexamination in light of *Findley.*[2]

---

1. Riley asked Lenihan about the correspondence which the majority holds set forth the breach, and Lenihan promised to "take care of it." 485 F.Supp. at 982. Lenihan did not take care of it. He did nothing, thus creating Riley's present predicament.

2. The majority quotes the district court's statement that Riley's "sole dissatisfaction with the Union is the fact that he was not reinstated with USPS." The complaint reveals, however, that he was also dissatisfied with the quality of the union's pursuit of his grievance.