**Joseph GUARINO, Joseph Yeadan and Stephen Mikulynec, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE and National Association of Letter Carriers Northeast (New York-Metro) Region, Defendants.**

Civ. A. No. 85–4526.

United States District Court,
D. New Jersey.

April 28, 1986.

Giblin & Giblin, Hackensack, N.J. by Ida L. Castro, for plaintiffs Guarino, Yeadon and Mikulynec.

Thomas W. Greelish, U.S. Atty., Newark, N.J. by Susan C. Cassell, Asst. U.S. Atty., for defendant U.S. Postal Service.

Ball, Kiernan, Livingston & Smith, Newark, N.J., and Cohen, Weiss & Simon

(N.Y.), New York City by Keith E. Secular, for defendant Nat. Ass'n of Letter Carriers.

## OPINION

STERN, District Judge.

Plaintiffs are former part-time letter carriers, members of defendant National Association of Letter Carriers ("the Union"), who were discharged when Postal Service change in their hours of employment created a conflict with their full-time jobs. Although an arbitrator found that the change in hours violated the collective bargaining agreement, she upheld the discharges as permissible discipline. The arbitrator's award is binding, barring a showing that the Union violated its duty of fair representation. Because the plaintiffs have not and cannot make such a showing, summary judgment is granted for defendants. The plaintiffs' motion for summary judgment is accordingly denied.

## FACTS

The parties agree on the following relevant facts:

The plaintiffs were part-time letter carriers employed by the Postal Service in Newark, New Jersey. Each had many years of employment unblemished by disciplinary action. Each held another full-time job that ended early enough in the day to allow him to begin work at the Post Office by the starting time of 4:45 P.M.

In the spring of 1982 the Postal Service moved up the starting times for all part-time letter carriers in Newark. Some of the slots were to begin at 4:00 P.M., others at 2:45 P.M. The Postal Service alleges that the earlier times were required for reasons of efficiency and improved delivery, especially of express mail. Plaintiffs allege that the change was made intentionally to force out these employees from their jobs.

As soon as the changes were announced, the Union initiated the grievance procedure, challenging the Postal Service's unilateral action as a violation of the collective bargaining agreement.

All fourteen part-time letter carriers had the right to bid on their preferred new starting times. With their seniority, all plaintiffs would have been able to bid into the 4:00 P.M. time slots. Plaintiffs, however, would not have been able to arrive at either starting time without incurring a conflict with their day jobs.

The plaintiffs asked their local union president whether to bid for the 4:00 P.M. slots. He refused to advise them one way or the other. They then refused to bid, and in late spring of 1982 were assigned to the 2:45 P.M. slots.

Over the course of the summer, plaintiffs were chronically late to work. The Postal Service issued them repeated disciplinary notices. All were grieved by the Union. Finally, in August and September 1982, the plaintiffs were discharged for tardiness. The discharges were also grieved. These grievances were denied at each stage of the grievance procedure established by the collective bargaining agreement. In October and December 1982, the Union appealed the denials to arbitration. However, it agreed with the Postal Service to postpone the arbitrations until after a resolution of the contract dispute.

That dispute worked its way slowly through the grievance procedure. At one point, it was remanded to a lower level, where it was again denied.

An arbitration hearing was held on June 3, 1983. The arbitrator issued her opinion five months later, on November 2, 1983. She ruled that the Postal Service's unilateral change in starting times had in fact violated the contract. Retaining jurisdiction, she left the remedy to be determined in the first instance by negotiations between the parties.

Not surprisingly, most of the part-time letter carriers still at work had adjusted to the new hours. The "remedy" agreed to by the parties was to leave these workers at their new times. Three of these workers, however, filed unfair labor practice

charges with the N.L.R.B., and in settlement of these charges the workers were returned to their original hours.

No agreement was reached on the proper disposition of plaintiffs' grievances. The Postal Service proposed a return to work without backpay—it is not clear at what starting time. Plaintiffs allege that they were not informed of this offer.

Finally, an arbitration hearing was scheduled for October 23, 1984—two years after the discharges complained of. Prior to that date, plaintiffs here had retained independent outside counsel, and asked to be represented by that counsel at the arbitration proceeding. The Union acceded to their request.

At the hearing, the Postal Service renewed its offer to reinstate plaintiffs without backpay—apparently at the new hours. Plaintiffs declined the offer. The hearing duly proceeded, and testimony and argument were presented by both sides.

On June 19, 1985, the arbitrator rendered her decision upholding the discharges. She first decided that under the collective bargaining agreement the grievants were obliged to obey the orders of the Postal Service, even if such orders proved later to be in violation of the contract. She then found that the plaintiffs had made no effort to conform to the new schedule. She was particularly influenced by the plaintiffs' failure to bid for the 4:00 P.M. time slots. Lastly, she decided that dismissal was warranted, because no lesser disciplinary action would have led plaintiffs to conform to the new starting times.

The defendants in this dispute agreed in their collective bargaining agreement to submit their differences to binding arbitration. The presumption in favor of finality of such arbitration is so great that a district court may not review the arbitrator's award no matter how harsh or unjust it appears to be, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976); *Findley v. Jones Motor Freight, Inc.*, 639 F.2d 953, 958 (3d Cir.1981). An exception to this rule occurs when the union's representation of a grievant has been "dishonest, in bad faith, or discriminatory," *Hines*, 424 U.S. at 571, 96 S.Ct. at 1059. In such a case, the individual grievant can obtain a determination of the merits of the dispute from the district court, provided he can first show the union's failure to represent him fairly. This failure must have damaged the presentation of the grievant's case to the arbitrator, *Findley*, 639 F.2d at 959. Furthermore, it must be a failure resulting from a "bad faith motive" on the part of the union; simple negligence is not a breach of the union's duty, *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 961 (3d Cir.1980).

Here, plaintiffs were represented by their own counsel, at their own request, at their arbitration hearing. No failure of the Union's duty can be inferred, of course, from the performance of outside counsel.

Instead, plaintiffs try to show a series of violations of the Union's duty at the grievance stages which poisoned the fairness of the arbitration procedure. Even assuming that such violations could lead to review of an arbitration award, this Court is persuaded that no violation of the Union's duty occurred here.

■ Plaintiffs first complain that the Union did not advise them as to whether they should bid on the later starting times. Their failure to do so, of course, in the end had a damaging effect on their case. However, there was no way for the Union officers to know that. The information available to them was no different than that available to the Union members themselves. Thus, this case does not resemble *N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters*, 740 F.2d 141, 148 (2d Cir.1984), which held that in certain circumstances the union has a duty to provide information to its members. Failure to give advice is simply not an actionable wrong.

■ Next, plaintiffs assert that they would have been better off if the Union had insisted on arbitrating the contract and disciplinary issues together. As a matter of tactics, this may or may not be so. The Court does not review tactical decisions

made in the course of grievance proceedings, *Marietta v. Cities Service Oil Co.*, 414 F.Supp. 1029, 1036 (D.N.J.1976). Other than tactically, the decision could not have prejudiced plaintiffs, who admittedly received a full hearing of their grievances before a competent arbitrator.

Third, plaintiffs assert that the Union did not notify them of the Postal Service's offer of their positions without backpay. There is no question, however, that the offer was renewed at the arbitration hearing itself, and that plaintiffs refused it. In any event, the failure to communicate a settlement offer cannot possibly affect the "integrity of the arbitration process," *Vosch v. Werner Continental, Inc.*, 734 F.2d 149, 154 (3d Cir.1984), and so cannot be grounds for a review of an award.

Lastly, plaintiffs allege that the Union refused to meet with them to plan this appeal of the arbitrator's decision. The Union has no obligation to appeal adverse arbitration awards. *Freeman v. Local 135, Int'l Bhd. of Teamsters*, 746 F.2d 1316, 1322 (7th Cir.1984).

The law is clear. Without a showing that the Union has violated its duty of fair representation, this Court has no power to reach plaintiffs' challenge to the arbitrator's award, no matter how meritorious their suit may appear.