Donald J. KING, Plaintiff,

v.

FOX GROCERY COMPANY, Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union Number 872, Defendants.

Civ. A. No. 84–2012.

United States District Court, W.D. Pennsylvania.

Aug. 7, 1986.

W. Timothy Barry, Paul M. Puskar, Pittsburgh, Pa., for plaintiff.

Gerard J. Koechel, Pittsburgh, Pa., Local 872, Robert M. Baptiste, Washington, D.C., for defendants.

## OPINION

### GERALD J. WEBER, District Judge.

This is an action under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and various state common law theories which plaintiff seeks to bring under our pendent jurisdiction. The parties have undergone thorough discovery and both defendants have moved for summary judgment. Plaintiff's response includes most of the relevant correspondence, employer's records, excerpts from depositions and other documentary evidence.

The facts are largely undisputed. Plaintiff was employed by Fox Grocery as an assembler of groceries for shipment to supermarkets. He also was a member of Local 872, the bargaining representative for Fox's employees. In September 1982 Fox introduced a system to measure its employees' productivity (the Gagnon system). This measuring system established a goal time within which employees were required to assemble grocery orders.

Plaintiff encountered difficulty meeting his productivity goals under the Gagnon system and was subjected to progressive discipline as provided by the collective bargaining agreement. He received a warning letter on July 8, 1983. He was suspended from work for one day on July 26, 1983. He was suspended from work for three days on September 9, 1983. He was suspended from work for five days on October 26, 1983.

Plaintiff filed a grievance over his three day suspension that proceeded, pursuant to Article 10, Section 2 of the collective bargaining agreement, to the Joint Area Committee made up of union and management personnel on November 2, 1983. The Committee reached a deadlock as to the propriety of the suspension. As noted above, plaintiff was suspended for an additional five days before this grievance reached the committee.

Around January 19, 1984 Fox Grocery and Local 872 agreed to settle the grievances over plaintiff's three day and five day suspension. The written agreement provided that the company would impose no discipline on plaintiff during a three week period beginning January 16, 1984. During this period Fox's supervisors were to observe and coach plaintiff in an effort to improve his performance. Though it was expected that plaintiff would be a party to the agreement, he refused to sign because it included a waiver of any claims to back pay.

On February 6, 1984 Fox issued a second five day suspension to plaintiff. On the same day he filed a grievance, known as No. 12, concerning this suspension. This grievance proceeded to the Joint Area Committee on March 7, 1984, but the Committee again was deadlocked. On March 16, 1984 plaintiff was discharged from his job. He appealed the discharge three days later.

The appeal from plaintiff's discharge went before the Joint Area Committee on April 4, 1984. The Committee deadlocked on the decision to consider the appeal because plaintiff had not formally filed a grievance. Plaintiff filed the proper grievance, No. 14, and the matter was resubmitted to the Committee on May 2, 1984. The Committee ruled in favor of Fox Grocery. Grievance No. 12 over plaintiff's five day suspension still had not been resolved, so following this ruling, Fox and Local 872 agreed to settle the grievance for five days back pay. Plaintiff refused to take part in the settlement nor did he cash the check for back pay.

### Discussion

An employee may bring suit against his employer under 29 U.S.C. § 185 for breach of a collective bargaining agreement. The employee also may sue his union in the same action, but where grievance and arbitration procedures exist, the employee must show that the union breached

its duty of fair representation. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Flores v. Levy*, 757 F.2d 806 (7th Cir.1985). A breach of this duty occurs when the union's conduct is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Mere negligence or ineptitude does not constitute a breach. *Findley v. Jones Motor Freight*, 639 F.2d 953 (3d Cir.1981). An employee may not recover either against the employer or the union unless he proves both the employer's breach of contract and the union's unfair representation. *Findley, supra.*

■ Plaintiff's primary claim here is that both elements are made out by defendants' failure to pursue the warnings, suspensions, and discharge to arbitration pursuant to the collective bargaining agreement. It is plain that an employee does not have an absolute right to arbitration. The mere failure of a union to proceed to arbitration will not establish unfair representation. *Vaca v. Sipes, supra; Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616 (8th Cir.1978). Were this the sum of plaintiff's allegations as made out by the evidence thus far, defendants would be entitled to judgment in their favor.

■ Certain evidence, however, raises questions about the propriety of the defendant union's actions when viewed in a light most favorable to plaintiff. For example, the February 10, 1984 letter from the International Union President to the Secretary-Treasurer of Local 872, while far from conclusive, suggests that the Local did not follow "normal channels" in proceeding with plaintiff's first grievance. In addition, Local 872's change of counsel in the midst of disciplinary proceedings against plaintiff may have affected the representation afforded him. The November 17, 1983 letter from counsel for Fox Grocery to then-counsel for Local 872 contains a discussion of plaintiff's "discharge [to] take effect immediately upon receipt of the award in the upcoming arbitration regarding his suspension." Plaintiff's Exhibit D.

This is far in advance of plaintiff's actual discharge on March 16, 1984 and refers to an arbitration that apparently never took place. The March 28, 1984 letter from Local 872's Secretary-Treasurer to its new counsel also refers to the possibility of arbitration of plaintiff's second grievance which again did not take place. We emphasize our view that none of these points is conclusive or decisive, but simply are issues preventing us from finding the moving parties entitled to judgment as a matter of law. Finally, both plaintiff and Fox Grocery have submitted as evidentiary material excerpts from the labor contract concerning grievance and arbitration procedures. A comparison reveals that these excerpts do not come from the same document. This discrepancy no doubt can be quickly explained but its presence does not give the court firm grounds on which to decide the ultimate issue in this case.

■ Plaintiff's other claims against defendant employer do not carry this threshhold merit. Plaintiff is not entitled to proceed on a general theory of wrongful discharge because such tort theories have been permitted in Pennsylvania, as noted by the Court of Appeals for the Third Circuit, only when statutory remedies were unavailable. See, *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 919 (3d Cir.1982). Plaintiff was protected by a collective bargaining agreement and, failing that, the statutory shields of the LMRA as described above. In the same vein we will not recognize a claim based on plaintiff's allegation that he was wrongfully discharged for protesting unsafe working conditions. The Occupational Safety and Health Act prohibits discrimination against employees who seek to invoke it. 29 U.S.C. § 660(c). An employee who believes he is the victim of such discrimination may file a complaint with the Secretary of Labor. *Id.* This is the statutory remedy applicable to allegations of this nature; the courts of appeals have not found a private right of action under OSHA. See *Taylor v. Brighton Corporation*, 616 F.2d 256 (6th Cir. 1980); *McCarthy v. Bark Peking*, 676 F.2d

42 (2nd Cir.1982), vacated and remanded on other grounds, 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983). Nor has plaintiff included any evidence which would establish a link between his discharge and any protests he made about unsafe conditions. Plaintiff has not as yet satisfied the court as to the relevance of the evidence concerning the taping down of high speed buttons on the employee's pallet carriers. He fairly has established that employees engaged in this prohibited practice; that he had done so on two occasions; that management was aware of this practice; and that OSHA had cited Fox for this violation of safety standards. Plaintiff has not shown how this relates to his discharge.

### Proposed Expert's Report

Plaintiff has attached to his pretrial narrative an expert's report drafted by a local lawyer of long experience who spent his career in the legal department of the United Steelworkers union. This report is the subject of pending motions to strike by both defendants. The report is not admissible and will be stricken.

Federal Rules of Evidence 701–706 govern the use of expert testimony. Rule 702 supports a broad definition of the term "expert" and Rule 704 abolishes any objection to expert testimony if "it embraces an ultimate issue to be decided by the trier of fact." Review of the report shows that it does not simply embrace an ultimate issue; it consists almost entirely of the proposed expert's opinion on the ultimate issue. The report is a far cry of the typical form of expert's report which largely concerns itself with complex or disputed facts. The trier of fact does not need an expert to determine the facts of this labor case. All that need be done is to unravel the chronology of conduct among the parties during the period in question. While there are some areas of factual inquiry which will require detailed explanation, the facts are well within the layman's understanding, which more than likely encompasses this sort of labor dispute. Plaintiff's proposed expert's report includes a two page recita-

tion of facts, which merely summarizes facts already in the record, in a 17 page report. This report does little to aid the factfinder's understanding of *facts* in this case and thus will be stricken.