Michael W. BELLESFIELD, Plaintiff,

v.

RCA COMMUNICATIONS, INC. and American Communications Association, Local 10, Defendant.

Civ. A. No. 86–4374.

United States District Court, D. New Jersey, Civil Division.

Nov. 23, 1987.

Ball, Livingston & Tykulsker by David Tykulsker, Newark, N.J., for plaintiff.

Pitney, Hardin, Kipp & Szuch by Gregory C. Parliman, Morristown, N.J. for defendant RCA American Communications, Ltd.

Cohen, Weiss and Simon by Margaret Cary, New York City and Schneider, Cohen & Solomon by David Grossman, Jersey City, N.J., for defendant Local 10, A.C.C., I.B.T.

## OPINION

BARRY, District Judge.

### I. *Introduction*

Plaintiff Richard Bellesfield ("Bellesfield") was hired by defendant RCA Communications, Inc. ("RCA") as a permanent

technician in September 1984. In that position Bellesfield was represented by defendant Local 10, American Communications Association ("Local 10" or "Union").

On May 6, 1986, Richard Hanf ("Hanf"), a shop steward for the Union and one of Bellesfield's co-workers, reported to supervisor James Evans ("Evans") that earlier that morning Bellesfield had physically assaulted him and threatened to burn down his house, blow up his car, and kill him and his wife. Plaintiff's Brief in Opposition to Motion for Summary Judgment at 3 (hereinafter "Bellesfield Br."). Approximately two hours after the incident allegedly took place, Evans met with Bellesfield to discuss the allegations. Evans Dep. 8:25–9:12. According to Evans, Bellesfield said that the pressure resulting from the incident was such that he felt "the best course of action was to resign." Id. Evans then told plaintiff that a resignation would appear to be an admission of guilt, and so advised against it. Id. (Bellesfield does not recall this conversation taking place. Bellesfield Dep. 60:11–20.)

The following morning, Bellesfield and Evans met again. Evans, having spoken with the RCA management (in particular, with Edwin Hill ("Hill"), Manager, Compensation and Labor Relations), presented Bellesfield with two options: indefinite suspension pending investigation of the alleged incident, or termination. Bellesfield Dep. 61:17–21. Bellesfield at that point tendered his resignation to Evans. Id. 64:21–24.

There is some dispute as to whether the resignation offered and accepted on May 7, 1986 was voluntary or not. Hill confirmed RCA's acceptance of the resignation by letter to Bellesfield, dated May 7, 1986, in which Hill called the resignation "voluntary." Parliman Aff., Tab 5; Bellesfield Dep. 65:10–19. Bellesfield claims to have written Hill the following week, on May 13, 1986, to inform RCA that the resignation, "although voluntary, ... was certainly not with my full will." Parliman Aff., Tab 6; Bellesfield Dep. 67:15–24. The letter is unsigned, and although Bellesfield claims to have mailed it, Hill asserts that he never

received any such letter. RCA Brief in Support of Motion for Summary Judgment at 6 n. 1 (hereinafter "RCA Br."). It is undisputed that Bellesfield neither requested that any Union representative be present at the May 6 or May 7 meetings with Evans, Bellesfield Dep. 61:11–16, nor informed the Union of his decision to resign. Id. at 65:20–22.

On June 25, 1986, Bellesfield wrote the Union to inform it of his desire to grieve his termination of employment. Parliman Aff., Tab 12. This was the first time that Bellesfield had informed anyone at the Union that he believed his resignation to be other than fully voluntary. Bellesfield Dep. 73:25–74:3. After receiving the letter, Joseph Foy ("Foy"), the Secretary–Treasurer of Local 10, contacted Richard Ford, plaintiff's shop steward. Ford informed Foy that he believed Bellesfield's resignation to have been voluntary. Foy Dep. 9:23–10:20; Local 10 Brief in Support of Motion for Summary Judgment at 6 (hereinafter "Union Br."). On August 25, 1986, Foy wrote to Hill, requesting a "clarification" as to the circumstances surrounding the resignation. Parliman Aff., Tab 10. On September 16, 1986, Hill wrote back to Foy, indicating that RCA had not received any response from Bellesfield to Hill's letter of May 7, and thus that RCA had no reason to doubt its initial determination that the resignation was voluntary. Parliman Aff., Tab 11. Meanwhile, on September 2, 1986, Bellesfield was convicted of simple assault concerning the events of May 6th following trial in municipal court.

It appears that no further action was taken by Local 10 prior to November 5, 1986, when Bellesfield commenced an action in this court under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In his complaint, Bellesfield alleges both that the Union breached its duty to fairly represent him in pursuing the grievance procedure, and that RCA breached the collective bargaining agreement by in effect terminating plaintiff's employment without just cause. On December 18, 1986, Foy wrote to Bellesfield that a grievance meeting was to be held among Bellesfield, the Union, and RCA. Prior to the meeting,

Foy and another Union official met with Bellesfield for fifteen minutes to discuss his case; plaintiff admits that at that time he did not present any new evidence in support of his claim. Bellesfield Dep. 187:25–188:17. At the meeting, conducted on January 28, 1987, Bellesfield had an opportunity to make a presentation on his own behalf. *Id.* 79:25–80:3. Upon the conclusion of the meeting, RCA denied the grievance and maintained its position that plaintiff's resignation had been voluntary. *Id.* 187:11–13.

On February 3, 1987, plaintiff's attorney formally requested that Bellesfield's termination be arbitrated. Parliman Aff., Tab 8. In his response a week later, Foy reiterated the Union's request that Bellesfield provide it with any additional information he might have concerning his termination, noting that "without such information, it is my judgment that it would be very difficult to prevail at arbitration and that I would so advise the Union." Parliman Aff., Tab 9. No further information concerning the resignation has been forwarded by Bellesfield to the Union. Bellesfield Dep. 191:12–192:4.

In the motions before me, the Union and RCA seek to have summary judgment entered on their behalf, asserting that plaintiff has failed to place sufficient facts in issue to raise any material questions concerning the Union's alleged breach of its duty of fair representation or RCA's alleged breach of the collective bargaining agreement [1] which, in any event, provides a mandatory grievance procedure which was not utilized beyond the initial stage. Bellesfield has cross-moved under Fed.R. Civ.P. 56(f), requesting that the summary judgment motions be continued pending a reopening of and further discovery by him. Since I find that a breach of the Union's duty of fair representation could not be found by a factfinder on the evidence before me, and since I find no merit in plaintiff's Rule 56(f) claim, summary judgment for the Union and RCA is appropriate.

## II. *Discussion*

■ Because unions serve as the exclusive bargaining agent for all employees in a collective bargaining unit—including those employees opposed to the union—courts have imposed on such unions a duty of fair representation in negotiating and enforcing collective bargaining agreements. *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). This duty requires unions to "serve the interest of all members without hostility or discrimination towards any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*, *quoted in Bazarte v. United Transportation Union*, 429 F.2d 868, 871 (3d Cir. 1970). It is necessary to prove a breach of this duty on the part of a union before the union or the employer may be held liable for damages arising from an alleged breach of the collective bargaining agreement. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983).

■ To establish a breach of the duty of fair representation, the employee must show that the union's actions towards him were "arbitrary, discriminatory, or in bad faith." *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir.1986), *quoting Vaca*, 386 U.S. at 190, 87 S.Ct. at 916; *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 75 (3d Cir.1985). A union is not free to ignore without reason a potentially meritorious grievance, or to pursue that grievance in "perfunctory fashion." *Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir.1981).

■ However, the union's duty to represent the varied interests of its constituent members requires that the union be afforded a certain amount of discretion in deciding how best to safeguard those interests. *Masy*, 790 F.2d at 328. Thus, it is not enough for a member of the collective bar-

---

**1.** On a motion for summary judgment, the burden is on the nonmoving party to come forward with evidence sufficient to allow a rational factfinder to conclude that that party has proven all contested material elements of his or her claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

gaining unit to show that the union committed a mistake in the prosecution of a grievance, *Riley*, 668 F.2d at 228, nor is it sufficient to show negligence or poor judgment on the union's part. *Maoilo v. Klipa*, 655 F.Supp. 1139, 1143 (W.D.Pa.1987). Similarly, it does not establish a breach of the duty if the employee demonstrates that the grievance, if pursued, would have been meritorious. *Pachick v. Friedman's Express, Inc.*, 664 F.Supp. 944, 954 (M.D.Pa. 1986).

■ Rather, the employee must present credible evidence to prove that the union's conduct was in fact arbitrary, discriminatory, or undertaken in bad faith. *Riley*, 668 F.2d at 228; *Bazarte*, 429 F.2d at 872. More than mere unsupported allegations are required to justify a finding of bad faith on a union's part. As one court has noted, where a claim of unfair representation is directed at a union "the proof requirements [to establish bad faith] are so uniquely high, such cases are often susceptible to disposition on summary judgment." *Maoilo*, 655 F.Supp. at 1143.

■ Bellesfield points to four discrete actions or inactions on the Union's part which he claims indicate that the Union breached its duty of fair representation. He first argues that the Union's delay in processing his grievance evidences Local 10's bad faith. Complaint ¶ 8. In particular, Bellesfield points to the seven months which passed from the date he informed the Union of his desire to pursue his grievance, June 25, 1986, until the first (and only) grievance meeting, January 28, 1987. Moreover, he asserts that any investigation or negotiations undertaken during that

time were conducted in bad faith. Complaint ¶ 10. *See* Union Br. at 21–22.

As to the time delay of seven months, it is clear that plaintiff suffered no harm from this delay. Since the collective bargaining agreement contains no time limits on the pursuit of claims, Bellesfield remains free to press his case—without the Union's aid—through the grievance and arbitration process. *See* Collective Bargaining Agreement, Section 32(c) (Parliman Aff., Tab 7). The Third Circuit has noted the importance of showing prejudice to an employee's interests where union inactivity is claimed to be violative of the duty of fair representation. *Bazarte*, 429 F.2d at 872 (union's failure to keep employee informed not breach of duty "especially since there is no showing that this prejudiced him in any way"). Plaintiff has also not pointed to any cases holding that a delay of time between the filing of a grievance and the first grievance meeting, absent a showing of prejudice, constitutes evidence of bad faith on the part of the union.

Furthermore, it is evident from the record that some investigation of plaintiff's claim did occur. As noted above, Foy spoke with plaintiff's shop steward, and wrote to Hill requesting a clarification of RCA's position on Bellesfield's termination. In addition, Foy spoke with plaintiff prior to the grievance meeting and specifically asked him for evidence which would support his claim of coerced resignation. Whether this was the most comprehensive of investigations is a question not before this Court; it is sufficient to observe that Bellesfield has presented no affirmative evidence to meet the "uniquely high" burden of proving that such investigation as did occur was undertaken in bad faith.[2]

---

2. Plaintiff cites *Findley v. Jones Motor Freight*, 639 F.2d 953 (3d Cir.1981), for the proposition that dissension between the union and an aggrieved employee heightens the duty of fair representation. Bellesfield Br. at 8. That case, in dictum, noted that where the economic interests of the union were opposed to the interests of a group of employees or where there were internal political rifts within the union, the duty of fair representation might be enhanced by such circumstances. 639 F.2d at 958. That sort of direct conflict is not present here, where the employee is not asserting an economic, politi-

cal, or other group-based claim adverse to the union, but rather is simply basing a grievance on the alleged falsehoods of a union shop steward.

It may have been quite rational for Bellesfield to feel that under the circumstances he was not likely to receive the utmost representation from the Union. However, in light of the reasonable investigation actually undertaken by the Union and in light of plaintiff's failure to point out, to the Union or to the Court, any affirmative evidence presented to the Union which the Union

■ Plaintiff next argues that the Union's failure to inform him either of available intra-union appeals of his termination, Complaint ¶ 9, or of the status of his grievance, Complaint ¶ 11, is indicative of bad faith. The Third Circuit has clearly held, though, that a union's failure to inform an employee of its decision not to pursue a grievance does not establish that the union acted in bad faith. *Bazarte*, 429 F.2d at 872. Courts in this circuit have generally been reluctant to impose on unions a duty to keep employees fully informed of all steps of the grievance process. *See Scott v. Local 863, Int'l Brotherhood of Teamsters*, 725 F.2d 226, 229 (3d Cir.1984) (union not required to explicitly inform employee of union's cessation of its representation); *Guarino v. United States Postal Service*, 633 F.Supp. 682, 685 (D.N.J.1986) (failure to communicate a settlement offer not enough to show breach of duty of fair representation). Moreover, plaintiff did not contact the Union or local shop stewards in person or by phone at any time to inquire of the status of his grievance. Bellesfield Dep. 185:8–16. While reference is made to a letter sent to the Union "subsequent" to the June 25, 1986 request for a grievance, a copy has not been provided to the Court and the contents have not been described. *Id.* at 185:2–7. Under these circumstances, I cannot find that a rational factfinder could conclude that the Union's failure to keep Bellesfield informed is proof of the Union's bad faith.

■ Bellesfield's third allegation of Union bad faith is premised on the Union's failure to take plaintiff's grievance to arbitration. Complaint ¶ 11. The Union has the right, however, to decide not to pursue a particular grievance claim, so long as that decision is not arbitrary or made in bad faith. *Bazarte*, 429 F.2d at 872. "A union is not required to prosecute a grievance that it honestly believes lacks merit." *Faust v. RCA*, 657 F.Supp. 614, 621 (M.D. Pa.1986). An employee must prove that the union processed the grievance in a "perfunctory fashion," evidenced by a showing of "actual bad faith or arbitrary

conduct" and not "mere[ly] ineptitude or negligence." *Riley*, 668 F.2d at 228, *quoting Findley v. Jones Motor Freight*, 639 F.2d 953, 960 n. 2 (3d Cir.1981).

Two recent cases demonstrate the type of showing required to transform a union's decision not to pursue grievance or arbitration into evidence of bad faith. In *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir.1985), *aff'd on other grounds*, —— U.S. ——, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1986), the court found that the union failed to file grievances even though it knew that blacks were being discharged at disproportionate rates. The union's intentional inaction presented more than "mere acquiescence" in the discrimination, and thus was a violation of the duty of fair representation. *Id.* at 126–27. In *King v. Fox Grocery Corp.*, 642 F.Supp. 288 (W.D.Pa.1986), the evidence indicated that the union's decision not to arbitrate was based on factors other than the perceived merit of the employee's claim. In particular, the court pointed out variances in King's case from the union's normal procedures in pursuing grievances. *Id.* at 290.

In the instant case, the Union looked at the evidence provided it by Bellesfield and by its own investigation, and decided that the grievance was without merit and that arbitration would be futile and a waste of resources. As previously noted, Bellesfield has still not responded to the Union's February 1987 request for additional information in support of his claim of coerced termination. Bellesfield has himself noted that the Union probably does not have sufficient evidence about the incident to prevail at arbitration. Bellesfield Dep. 220:17–221:13. Because the Union was unable to procure any evidence supporting plaintiff's claim from either shop steward Ford or from RCA, and because plaintiff is uniquely situated to provide the Union with evidence on his behalf and has chosen not to do so, the Union was justified in terminating the grievance process. Moreover, on September 2, 1986, Bellesfield was convicted. The lack of evidence, combined with this conviction, establishes that the Union's

arbitrarily ignored, those feelings are not probative of bad faith.

decision not to arbitrate what it perceived to be a meritless grievance was made by the Union in good faith and on the basis of the evidence before it.

■ Bellesfield's fourth and final attempt to prove a breach of the duty of fair representation, raised for the first time in response to this motion, recites a history of strained relations between himself and Local 10. Bellesfield Br. at 1–2. These strained relations, the argument goes, were the result of a number of incidents: the year-long wait for Bellesfield's wage adjustment grievance to be processed, while a co-employee's grievance was processed in two weeks, Bellesfield Dep. 29:7–17, 121:5–11, 122:12–19; Foy's threat that "pressure" from the Union would continue if Bellesfield did not withdraw an NLRB complaint he had filed, Bellesfield Dep. 87:11–16; and shop steward Hanf's prior threats to injure plaintiff, Bellesfield Dep. 91:7–19, 141:4–13. While Bellesfield claims that RCA knew relations between Bellesfield and the Union were not amicable, Bellesfield Br. at 2, the deposition testimony of Evans states that any judgment of his concerning the bad relations would be "speculation." Evans Dep. 14:1–10.

According to plaintiff, in light of this history the Union should have perceived that Bellesfield, confronted with a charge that he assaulted a shop steward, would believe that the Union would not fairly and impartially represent him. Thus, in order to cure this conflict of interest, the Union was required to inform plaintiff, in the twenty-four hour period between the Union's being informed of the incident on May 6 and the plaintiff's second meeting with Evans on May 7, that the Union intended to fairly represent plaintiff in any grievance against RCA. Bellesfield Br. at 8. Had the Union done so, Bellesfield asserts that

he would have asked a Union representative to accompany him to the Evans meeting, and that he would not have tendered his resignation at that meeting. Bellesfield Aff. ¶¶ 7, 10. The Union's failure to so inform the plaintiff is in itself a breach of the duty of fair representation. Bellesfield Br. at 11.

I disagree. There is no requirement, at least in this circuit, that a union should inform an employee, immediately following an incident, that it intends to perform its legally-mandated duty of fair representation, or that the failure to so inform an employee could establish the union's bad faith. In addition, the general principle established in *Bazarte* and the later cases counsels that no duty to inform be imposed on Local 10 under the present circumstances.[3]

Moreover, I find that the duty sought to be required of the Union would make little sense. If the duty Bellesfield contends I should find would have required the Union to have informed plaintiff that it would fully pursue his claim through the grievance and arbitration processes, Bellesfield Br. at 8, then it is difficult to envision how the Union could truthfully provide such an assurance immediately after an accident. The Union's decision to grieve or arbitrate a given incident is dependent on the Union's weighing of the merits of the claim and the resources it would take to pursue that claim. Clearly, the Union's calculus cannot be performed in the immediate aftermath of an alleged incident, prior to any investigation of the matter. *See* Union Reply Br. at 10.

The duty proposed by Bellesfield may not go so far as to require assurances that a claim will be grieved and arbitrated, but rather may only require that the Union assure plaintiff that it will fairly represent

---

**3.** Plaintiff does cite two Ninth Circuit cases in support of the union duty to assure employees that their grievances will be fairly pursued. *See Zuniga v. United Can Co.,* 812 F.2d 443 (9th Cir.1987); *Robesky v. Quantas Empire Airways, Ltd.,* 573 F.2d 1082 (9th Cir.1978); Bellesfield Br. at 12–14. As noted by Local 10, the Ninth Circuit cases require that the breach of this ministerial duty must completely extinguish the employee's right to pursue his grievance. Un-

ion Reply Memo at 13–14; *see Dutrisac v. Caterpillar Co.,* 749 F.2d 1270, 1274 (9th Cir.1983). However, Bellesfield still may pursue the grievance process on his own, since no time limit applies to his claim. Union Br. at 22; Bellesfield Br. at 5–6. Thus, even under the Ninth Circuit standard—imposing a higher duty than does the Third Circuit—Bellesfield's proposed duty to assure would fall.

him. Bellesfield Br. at 11. This duty would be a purely ministerial act on the Union's part, and would require of the Union no exercise of its judgment or discretion. Thus, says plaintiff, a court should not be reluctant to impose this duty on the Union. *Id.* at 11–12.

I find it difficult to believe that an assurance by the Union—an organization with which plaintiff felt at odds—that it would perform its legal duty to fairly represent plaintiff, without an assurance that the Union would take the claim through the grievance and arbitration process, could result in the renewed trust in the Union envisioned in plaintiff's affidavit. In any event, even if the Union would be better advised to so assure those employees with strained Union relations, I cannot find that the Union's failure to do so, given the processing of plaintiff's claim though the first grievance meeting of January 1987, supports a finding of bad faith on the part of the Union. Affirmative evidence of bad faith would be required before a rational factfinder could reach that conclusion, and it is precisely such evidence which is absent in this case.

 Finally, plaintiff asserts that discovery, which has been closed since August 1987, should be re-opened in order to permit him to adequately respond to the summary judgment motions now before me.[4] In particular, he claims that discovery is needed as to the Union's regular procedure in processing grievance and arbitration matters, and that his former counsel failed to pursue such information prior to the close of discovery. Plaintiff asserts that the Union's reply brief for the summary judgment motion contained the first mention that plaintiff's case was deficient because plaintiff failed to point out any differences between the procedures in Bellesfield's grievance and those in any other grievance. Affidavit of David Tykulsker, 10–29–87, ¶¶ 8–9.

Bellesfield's Rule 56(f) claim fails on three grounds. First, plaintiff asserted this precise claim before Magistrate G. Donald Haneke on September 14, 1987, and the Magistrate denied Bellesfield's request to re-open discovery in an order dated September 21, 1987. Plaintiff could have appealed that order within ten days, pursuant to Local Rule 40(D)(4)(a) ("Any party may appeal from a magistrate's determination of a non-dispositive matter within 10 days . . ."). Thus, plaintiff had an opportunity to timely present to this Court his asserted need for the additional discovery, and he failed to do so. Rule 56(f) should not be used as an alternative to timely appeals from magistrates' orders.

Second, the Union's claim that Bellesfield has not proven differential treatment was raised only in partial response to Bellesfield's argument, first asserted in his opposition papers, that the Union was under a ministerial duty to inform all employees of its intention to fairly represent them. Union Reply Br. at 9 n. 4, 10. Plaintiff will not be heard to complain that a new wrinkle was added to this case by the Union when that addition occurred only because of his assertion of a new theory of recovery, the evidence in support of which he has not yet found. Finally, as noted above, case law in this Circuit has pointed to the importance of differential treatment as proof of bad faith on a union's part. *See King, supra.* Thus, plaintiff should have been on notice that at some point evidence of differential treatment by the Union would be required of him, and he should have sought that evidence prior to the week before the return date of a summary judgment motion. In any event, the laundry list of discovery sought by plaintiff, with no basis in fact offered for believing that he received differential treatment, is simply an attempt to forestall the inevitable.

Defendants' motions for summary judgment are granted. An appropriate order will issue.

---

4. Fed.R.Civ.P. 56(f) provides that

[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance . . .