639 F.2d 953
 106 L.R.R.M. (BNA) 2420, 90 Lab.Cas. P 12,544
 Michael J. FINDLEY
v.
JONES MOTOR FREIGHT, DIVISION ALLEGHENY CORPORATION, and
Teamsters, Chauffeurs, Warehousemen and Helpers
Local Union No. 429,
Jones Motor Freight, etc., Appellant in 80-1486,
Teamsters, Chauffeurs, Warehousemen and
Helpers of America, Local Union No. 429, Appellant in 80-1487,
Michael J. Findley, Appellee in 80-1486, 80-1487 Appellant in 80-1705.
 Nos. 80-1486, 80-1487 and 80-1705.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 16, 1980.
Decided Jan. 21, 1981.
 
 James A. Matthews, Jr. (argued), Dennis J. Morikawa, Morgan, Lewis & Bockius, Philadelphia, Pa., for Jones Motor Freight.
 Thomas W. Jennings (argued), Sagot & Jennings, Philadelphia, Pa., for Teamsters, Chauffeurs, Warehousemen and Helpers of America Local Union No. 429.
 George W. Gekas (argued), Milton Bernstein, Melman, Gekas, Nicholas & Lieberman, Harrisburg, Pa., for Michael J. Findley.
 Before HUNTER and WEIS, Circuit Judges and CAHN,* District Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 A union must provide its members with fair representation in resolving differences with employers. Alleging a violation of that duty, the plaintiff, unsuccessful in grievance proceedings, convinced a jury both of the deficiency of his union representation and the merits of his dispute with his employer. After review of the record, we conclude that the evidence failed to establish that the union breached its duty of fair representation and direct entry of judgment for the defendants.
 
 
 2
 The plaintiff filed suit in the district court against his former employer, Jones Motor Freight, asserting a termination of his employment in violation of the collective bargaining agreement, and against his union, Teamsters Local No. 429, asserting a breach of the duty of fair representation. A jury found that the union had not fulfilled its duty of fair representation, and, in a separate trial, also returned a verdict against the employer. The parties then stipulated to damages. Motions for judgment n. o. v. and new trial were denied.
 
 
 3
 Viewing the evidence most favorably to the plaintiff, the relevant facts are as follows. For several years before 1975, Findley had been employed as an over-the-road driver by Jones Motor Freight. On March 20 of that year, at 3:42 a. m., the telephone in the Findley residence rang, and the plaintiff's wife answered. Unable to understand what was being said, she handed the phone to her husband, who had also been asleep. Because of static, plaintiff was unable to identify the caller and hung up.
 
 
 4
 Since Findley was due to receive a work assignment from Jones Motor Freight, his wife thought the call might have come from the company and suggested that he call back. Findley was unsuccessful in dialing Jones directly, but with the assistance of a long distance operator, he was finally able to reach Warren Becker, a line haul coordinator at the terminal. Becker said Findley's refusal to accept the work call some minutes earlier was being deemed a voluntary quit. Findley detailed the difficulties with the telephone connection, but Becker refused to accept the explanation. Immediately after this conversation, Mrs. Findley reported the malfunction to the telephone company.
 
 
 5
 Between 7 and 8 a. m. that same morning, Findley received another telephone call and was barely able to hear the words "Western Union." He walked to a pay station in a nearby shopping center where he called Western Union and received the following message: "Your refusal to accept a work assignment in accordance with company work rules at 0347 hours this date is a 'voluntary quit' on your part and your status as an employee of this company is terminated (signed) W. L. Williard, Line Haul Supervisor."
 
 
 6
 Findley telephoned union business agent Gus Varish, who suggested filing a grievance with the union steward, Jack McCrary. When Findley returned to his home he met Craig Hunt, a repairman who had been dispatched by the telephone company to investigate the problem reported earlier that morning. Hunt found that the wire was partially corroded at the point where it entered the house. He replaced the defective section and gave the damaged wire to Findley. Hunt then went to a notary public's office, where he signed an affidavit stating that Findley's telephone was partially out of service "so that the complete call was not received." He also gave a copy of the Bell Company work order to Findley.
 
 
 7
 Following this, plaintiff went to the home of union steward McCrary and displayed the wire, affidavit, and work order. After hearing a description of the events, McCrary called the Jones supervisor and, terming the discharge illegal, demanded that Findley be put back to work. When the supervisor refused, McCrary assisted Findley in writing his version of the circumstances on a grievance form.
 
 
 8
 A few days later, Findley was notified by John Ignatosky, another union business agent, that a company level hearing was scheduled for the following Monday. No further investigation or interview with Findley by union representatives preceded that meeting, but Ignatosky and McCrary did accompany Findley to the hearing. Although plaintiff presented his documentary and demonstrative evidence, the company representative was not persuaded by it or Ignatosky's arguments for reinstatement. After denial of the complaint, the business agent announced his intention to begin the formal grievance procedure.
 
 
 9
 A hearing before the Joint Local City Grievance Committee was promptly arranged. Plaintiff was not told to bring his wife or any other witnesses. The designated panel consisted of two union members, one of whom was Varish, the business agent, and two industry representatives. The identity of the panel members was not disclosed to Findley, nor were there any consultations with Ignatosky or McCrary in advance of the hearing, although both were present.
 
 
 10
 During the hearing, Findley presented the Hunt affidavit, the piece of wire, and the work order. In addition, he spoke on his own behalf, and produced a letter from the Bell Company stating that a collect call had been placed to his residence at 3:42 a. m. lasting four minutes, and at 3:51 a. m. a station-to-station operator handled call lasting six minutes was placed to the Jones Company number. Ignatosky argued the facts of the case, contended that Findley had been discharged illegally, and urged that he be returned to work.
 
 
 11
 For its part, the company submitted an affidavit from an employee named Herr who said he heard Findley threaten Becker during the return call: "I'm going to get you for this." The employer argued that plaintiff had quit voluntarily, and the discharge therefore was not a proper grievance.
 
 
 12
 After the meeting, Ignatosky said that the telephone company letter which Findley had not disclosed before the hearing might have hurt his case. Before returning home, Findley had lunch with McCrary and talked to him about the case.
 
 
 13
 Unable to reach a decision, the joint local city panel declared it was deadlocked. The case was next taken before the Joint Area Grievance Committee, which met less than a month after Findley's discharge. Again, the company presented the Herr affidavit describing the alleged threats. Findley admitted that he told Becker he would "get him," but explained that this did not refer to physical harm, but to court action. Ignatosky read the grievance to the panel, and Findley once more reviewed the circumstances of the call and, except for the Bell Company letter, presented the same exhibits. He testified at the district court trial that the committee paid scant attention to his submitted exhibits. The Joint Area Grievance Committee found in favor of the employer. The union informed plaintiff of the result and told him that no further appeal was available.
 
 
 14
 The foregoing represents the factual basis for the district court's denial of the union's post trial motion. The court held that the failure of the union to investigate or attempt to present possible witnesses at the grievance meeting sufficiently evidenced a breach of the union's duty of fair representation. In addition, other factors the jury could have considered as having a substantially adverse effect on the grievance were said to be the failure to interview the Jones dispatcher who made the original call, the omission of any rebuttal to the irrelevant affidavit alleging threats to Becker, and the failure to argue the absence of prior warnings.
 
 
 15
 On appeal, defendants contend there was insufficient evidence to sustain the jury's determination that the union breached its duty of fair representation. The plaintiff cross-appeals from a denial of his request for counsel fees.
 
 
 16
 Because a union is authorized to act as the exclusive bargaining agent for its members, it has a duty to provide fair representation in the negotiation, administration, and enforcement of the collective bargaining agreement. A breach of that duty occurs when a union's conduct toward a member is "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). The union must be accorded a "wide range of reasonableness" to enable it to perform effectively, but this discretion is subject to "good faith and honesty of purpose." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563-64, 96 S.Ct. 1048, 1055-56, 47 L.Ed.2d 231 (1976) (citations omitted).
 
 
 17
 When a collective bargaining agreement provides mandatory grievance machinery in which the employee's rights are processed by union representation, the contractual requirements must be followed. Failure to exhaust those remedies may be a valid defense to a suit brought by an employee against his employer for a violation of the collective bargaining agreement.
 
 
 18
 At trial, the employee must demonstrate that he did not receive fair representation from the union as well as proving his claim against the employer. Vaca v. Sipes, supra 386 U.S. at 171, 87 S.Ct. at 907. These two elements must be established before the employee is entitled to relief under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1976).[1] Thus, an employee's claim against his employer for wrongful discharge may be meritorious, but he nevertheless cannot prevail in a federal court action unless he establishes a lack of fair representation. As the Court said in Hines v. Anchor Motor Freight, Inc., supra, 424 U.S. at 571, 96 S.Ct. at 1059,
 
 
 19
 "(t)he grievance processes cannot be expected to be error-free. The finality provision has sufficient force to surmount occasional instances of mistake. But it is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the union has been dishonest, in bad faith, or discriminatory; for in that event error and injustice of the grossest sort would multiply."
 
 
 20
 The duty of fair representation encompasses a variety of situations in which a grievance may arise. For example, in bargaining over the terms of a contract, the union may be placed in a position where securing benefits for one group works to the detriment of other members. There, the internal conflict presents special problems. E. g., DeBoles v. Trans World Airlines, Inc., 552 F.2d 1005 (3d Cir.), cert. denied, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). In processing grievances there are times when the interests of all the employees affected by given circumstance may not be harmonious. E. g., Smith v. Hussmann Refrigerator Co., 619 F.2d 1229 (8th Cir. 1980) (en banc). None of those conflicts are present here, nor is this a case of bad faith on the part of the union officers growing out of internal political dissension, such as that present in Hines v. Local 377, Teamsters Union, 506 F.2d 1153 (6th Cir. 1974), rev'd on other grounds, Hines v. Anchor Motor Freight, Inc., supra.
 
 
 21
 The mere refusal of a union to take a complaint to arbitration does not establish a breach of duty, even if the member's claim was meritorious. Vaca v. Sipes, supra, 386 U.S. at 192-93, 87 S.Ct. at 917-18. Proof of arbitrary or bad faith union conduct in deciding not to proceed with the grievance is necessary to establish lack of compliance with the fair representation. Id. at 194-95, 87 S.Ct. at 918-19. But once the grievance mechanisms have been utilized, as here, the focus is on whether, contrary to the arbitrator's decision, the employer did breach the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome. Hines v. Anchor Motor Freight, Inc., supra at 424 U.S. 568, 96 S.Ct. at 1058. Accordingly, the issue here is whether the union's representation in the grievance proceedings was within the "range of acceptable performance," and if not, whether it tainted the adverse arbitral decision.
 
 
 22
 The standard to be applied to union advocacy in grievance proceedings must be governed by the climate in which it functions. The perimeters of the minimally acceptable conduct cannot be too lax, or there will not be an appropriate safeguard for the union member whose important contractual rights are entrusted to and dependent upon the union's efforts in his behalf. On the other hand, to hold lay union representatives to the demanding tests applied to a trained trial lawyer would defeat the aims of informality and speedy resolution contemplated by labor-management grievance agreements.
 
 
 23
 The various grievance hearings here were informal, not governed by any rules of evidence, and without the participation of any legally trained persons. The procedures were designed to develop the issues quickly and with a minimum of evidence. The grievance panels had no subpoena power or authority to provide discovery. It is in this context that the action of the union representatives must be judged.
 
 
 24
 In Bazarte v. United Transportation Union, 429 F.2d 868, 872 (3d Cir. 1970), this court considered the problem and said, "proof that the union may have acted negligently or exercised poor judgment is not enough to support a claim of unfair representation." There the union concluded that a grievance proceeding should be abandoned, because the member's claim was hopeless. We held there was no breach of duty even if the union representatives were "unwise" in their judgment or "negligent" in arriving at their decision, because mere inadequacy was not the standard to be applied. Id. Rather, it was necessary to show that the union proceeded in bad faith or an arbitrary manner, and that its short-comings prejudiced the member's cause. Id.
 
 
 25
 In a more recent case, Medlin v. Boeing Vertol Co., 620 F.2d 957, 961 (3d Cir. 1980), we reiterated that "(i)n order to state a claim for breach of this duty, it is essential that plaintiffs allege a bad faith motive on the part of the union." What constitutes "bad faith" in a given case, of course, depends upon the circumstances. But we are guided by the principle that fair representation by the union is necessary to preserve the integrity of the arbitral process.
 
 
 26
 In the case at hand, the plaintiff advanced a variety of derelictions on the part of the union. Close examination of these alleged failings, either singly or in combination, however, does not demonstrate any prejudice to the plaintiff, and indeed establishes, at best, no more than arguably negligent conduct.
 
 
 27
 According to the plaintiff, the union should have had Hunt, the telephone repairman, present at the grievance meetings. But Hunt testified in the district court he would not have attended the grievance proceedings unless he had been subpoenaed, a power the panel lacked. In any event, Hunt's affidavit explaining the repairs to the telephone was produced at each hearing and was never rebutted by the Jones Company. The affidavit was favorable to plaintiff and he did not show how his case would have been improved if indeed it would have been by Hunt's presence.
 
 
 28
 Plaintiff also asserts that the union was derelict in failing to brief him before the various hearings and in not suggesting that he bring his wife to testify. But as Mrs. Findley's testimony in the district court revealed, her evidence would only have been cumulative. Not even a trial lawyer could be faulted for not producing such a witness in most routine litigation.
 
 
 29
 The necessity for Findley to have additional consultations with the union representatives was not explained at the trial, nor was any prejudice demonstrated. The plaintiff explained the facts to the union steward and to the business agent at the outset. In the district court, Findley did not testify to any additional facts that could have been produced at the grievance hearing had he been counseled by the union. Nor did he show that his union advocates were unfamiliar with his case. Even if it be said that in failing to counsel him the union was negligent, that is insufficient to support a finding that fair representation was lacking. Franklin v. Southern Pacific Transportation Co., 593 F.2d 899, 901 (9th Cir. 1979).
 
 
 30
 Another allegation against the union is that it did not pursue the possibility of investigating other witnesses or interviewing them. In some circumstances, such an omission may prove inadequate presentation of a grievance. See, e. g., Minnis v. UAW, 531 F.2d 850, 853 (8th Cir. 1975). Nevertheless there must be a demonstration that the omission damaged the grievance presentation. Hines v. Anchor Motor Freight, supra at 424 U.S. 568, 96 S.Ct. at 1058; Siskey v. General Teamsters Local No. 261, 419 F.Supp. 48, 53 (W.D.Pa.1976). Plaintiff notes that no statement was secured from the Jones dispatcher who placed the initial call to the Findley home. But the jury was not told what this witness would have said and to assume that he would have been helpful is sheer speculation. Plaintiff was required to produce at least the substance of the witness's knowledge of the incident. Venzie Corp. v. United States Mineral Products Co., 521 F.2d 1309, 1312 (3d Cir. 1975); see also Mangiaguerra v. D. & L. Transport, Inc., 410 F.Supp. 1022, 1023-24 (N.D.Ill.1976).
 
 
 31
 Nor is there merit in the contention that the union was derelict in failing to rebut Herr's affidavit about threats made by Findley. In fact, plaintiff conceded that he had used the same or similar language, but contended that he had intended a different meaning from that which Herr took. Just what further rebuttal plaintiff contends could have been made was never explained to the jury or to us.
 
 
 32
 We also find no significance in the argument that the union should have notified plaintiff of the grievance panel membership. The basis for alleging that this failure breached the union's duty is unclear, because the plaintiff did not testify to any right to challenge members of the panel or that he would have been inclined to do so in the circumstances.
 
 
 33
 The collective bargaining agreement required that a warning was to be given to an employee before he was discharged, except in certain circumstances not relevant here. Plaintiff contends that the union did not properly press this point. However, the company argued there was no discharge, but rather a voluntary quit, and therefore no warning was required. If the company was correct, then the warning issue was irrelevant. If the plaintiff was not guilty of any misconduct, as he contended, then invocation of the warning requirement might have been construed to be inconsistent with innocence and thus inappropriate to argue before the panels. At most, failure to raise this contractual provision amounted to negligence. Consequently, the union cannot be held liable for not making this argument. See Ethier v. United States Postal Service, 590 F.2d 733, 736 (8th Cir. 1979).
 
 
 34
 Certain acts or omissions by a union may in a proper case support a finding that the grievance was processed in a perfunctory manner. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 n.10 (3d Cir. 1978). However, the union's presentation of the grievance here cannot be characterized as "perfunctory." Plaintiff's claim was taken through every stage of the grievance procedure available under the contract. Two union representatives familiar with the claim presented it at each level. Plaintiff was present and testified at each proceeding, cf. Robesky v. Qantas Empire Airways Ltd., 573 F.2d 1082, 1090 & n.17 (9th Cir. 1978), and after each hearing, he expressed his satisfaction with the union representatives. See Hardee v. North Carolina Allstate Services, Inc., 537 F.2d 1255, 1259 (4th Cir. 1976).
 
 
 35
 Plaintiff apparently feels that the union spokesmen should have been more aggressive in their approach. Seemingly Findley would have us rely on some variant of the trial lawyer's aphorism, "If you can't pound on the law or the facts, pound on the table." We are not impressed with the premise that volume either enhances or substitutes for lack of content in argument. Whatever meaning "perfunctory" might have in other circumstances,[2] it cannot be applied to the union's representation here.
 
 
 36
 The conduct of the union in the instant case was, at the least, adequate and within the realm of "acceptable performance" contemplated by Hines. Our review of the entire transcript in this case reveals no evidence of animosity between the plaintiff and the union or its representatives, no slighting of his interest in favor of others, no complete disregard in assessing the merits of his grievance, or any other indication of bad faith or arbitrary conduct. Even if we were to adopt the standard of mere negligence, see Ruzicka v. General Motors Corp., 523 F.2d 306 (6th Cir. 1975), the conduct of the union in this case would pass muster. Moreover, even if certain actions of the union were arguably negligent, there has been no showing that they tainted the committee's decision. Hines v. Anchor Motor Freight, Inc., supra at 424 U.S. 568, 96 S.Ct. at 1058.
 
 
 37
 A union's representation must be made in good faith. It must be vigorous enough so that available opportunities to present the grievance are utilized, and sufficiently thorough so that the basic issues are presented in an understandable fashion. There must also be, however, due regard for the fact that both the advocates and the tribunal members are laymen, unlikely to be impressed by evidential nuances and cumulative testimony dear to the heart of trial advocates. If the panel had the essential facts before it, a decision adverse to the employee does not establish a breach of the duty of fair representation, even if a court would have come to a different conclusion in passing on the merits of the grievance.
 
 
 38
 We conclude, therefore, there was insufficient evidence of unfair representation for submission to the jury, and judgment n. o. v. should have been entered for the defendants.[3] Accordingly, the judgment of the district court in favor of the plaintiff will be vacated and the case remanded for entry of judgment in favor of the defendants.
 
 
 
 *
 Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Section 301(a) provides, in relevant part:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce or defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185.
 
 
 [2]
 Mere ineptitute or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term "perfunctory." Morgan, Fair is Foul, and Foul is Fair Ruzicka and the Duty of Fair Representation in the Circuit Courts, 11 Tol.L.Rev. 335, 341-42 (1980). Although negligence alone has not been classified as perfunctory, one commentator has noted that the Vaca "perfunctory" standard permits courts to ensure that unions represent individuals fairly by delineating a minimum standard of fair representation. Clark, The Duty of Fair Representation: A Theoretical Structure, 51 Tex.L.Rev. 1119, 1170-72 (1973)
 
 
 [3]
 Plaintiff's cross appeal for counsel fees, therefore, need not be addressed