Carlos MATOS

v.

KURZ–HASTINGS, INC., et al.

Civ. A. No. 87–5600.

United States District Court,
E.D. Pennsylvania.

Dec. 14, 1988.

Judith Brown Chomsky, Philadelphia, Pa., for plaintiff.

Paula R. Markowitz, Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Carlos Matos was employed by defendant Kurz–Hastings, Inc. ("Kurz–Hastings") as a special coating machine operator from June, 1983 to June, 1987. Plaintiff was also a member of defendant Teamsters Local 115 ("Union") which was the collective bargaining representative of the production and maintenance workers at Kurz–Hastings' Philadelphia plant. On September 4, 1987, plaintiff Matos instituted an action against defendants Kurz–Hastings and Union pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Plaintiff alleged that defendant Kurz–Hastings denied him employment opportunities to which he was entitled under a collective bargaining agreement and discharged him without just cause and that the defendant Union failed to process two labor grievances on his behalf. Plaintiff contended that in failing to process these grievances, defendant Union breached its duty of fair representation owed to the plaintiff and had intentionally caused plaintiff severe emotional distress.

By Order dated June 16, 1988, plaintiff was granted leave to amend his Complaint. Inasmuch as the defendant Union had submitted plaintiff's grievances to arbitration after the filing of the original Complaint, plaintiff amended to allege that defendant Union had conducted the arbitration of plaintiff's grievances in an arbitrary, capricious, and bad faith manner. In addition, plaintiff alleged that the Union steward resolved grievances of Kurz–Hastings' employees from whom he received bribes through informal negotiations with Kurz–Hastings. Defendant Union has filed a motion for summary judgment as to both the § 301 cause of action and the intentional infliction of emotional distress claim. For the reasons stated below, this Court will enter summary judgment in favor of both defendants as to the § 301 cause of action.

### I.

Summary judgment is appropriately entered when the moving party demonstrates to the Court that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. In determining whether the movant has met his burden, the Court is required to inquire "whether the evidence presents a significant disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Disposition by summary judgment, however, is inappropriate where the evidence in the record reveals a genuine issue as to a material fact. As stated by the Third Circuit in *Ness v. Marshall:*

> Even if the preponderance of the evidence should appear to lie on the moving party's side, the court's function is not to decide issues of fact, but only to determine whether any issue of fact exists to be tried.

660 F.2d 517, 519 (3d Cir.1981).

In moving for summary judgment, the moving party must identify for the trial court those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). If the moving party meets this burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts" but, rather, must come forward with "specific facts showing that there is a genuine issue for trial". *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In reaching its ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983), and accept the non-movant's allegations as true and resolve any conflicts in his favor.

*White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.) *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1986).

## II.

The material facts concerning which there is no genuine issue are as follows: Plaintiff was hired by Kurz–Hastings as a special coating operator in June, 1983. The special coating operator position is a highly skilled position involving the operation of two multi-head presses which apply specially formulated coatings to polyester film. Plaintiff worked a three-shift rotating schedule, alternating at two-week intervals between the three different shifts. Kurz–Hastings requires this rotation to insure that every operator be familiar with the research and development work of the company which is primarily performed during the first shift.

In early April, 1987, plaintiff was granted a medical leave of absence for drug and alcohol rehabilitation. Following successive stays at a detoxification center and psychiatric hospital, plaintiff was discharged from care on May 15, 1987. Plaintiff's physician, by letter dated May 8, 1987, informed Kurz–Hastings that Mr. Matos feared that if he returned to work on rotating shifts, "his psychological health will be impaired and his recovery from substance abuse will be impinged upon" because he previously used amphetamines for a period of time "in order to stay awake because of inability to cope with or adapt to shift changes." The doctor recommended that plaintiff be "placed on one consistent shift over the next year until his circumstances can be re-evaluated."

Subsequent to his release from the hospital, plaintiff telephoned Kurz–Hastings plant manager, Victor Frantz, and asked that he be permitted, upon his return, to work a steady shift job rather than a rotating shift job. Mr. Frantz informed plaintiff that he could not grant the request and advised him to speak to the Union. A Union official advised plaintiff that because no other jobs were available, he should return to his rotating shift job. Plaintiff took no other action with respect to returning to work for several weeks.

On June 16, 1987, Kurz–Hastings sent a letter to plaintiff advising him: (1) that his request to work a straight shift job was denied; (2) that he should report back to work on June 22, 1987 on the third shift; and (3) that if he did not return to work, he would be terminated "for failure to return to work at the expiration date of your authorized leave of absence." Plaintiff did not return to work but, rather, on June 17, 1987, filed a grievance directly with Kurz–Hastings alleging that the company had violated Sections 6 and 12 of Article XVIII of the collective bargaining agreement. A copy of the grievance was submitted to the Union. Kurz–Hastings replied by letter dated June 25, 1987, stating that the grievance had to be submitted through the Union pursuant to the collective bargaining agreement. Kurz–Hastings further advised plaintiff that, consistent with its letter of June 16, the company considered that plaintiff had abandoned his position by failing to report to work on June 22, 1987. Despite the fact that Article XV, Section 1 of the collective bargaining agreement required the Union to make its demand for arbitration within eighteen days of the action complained of, the Union did not file a demand for arbitration for almost six months.

Both before and after plaintiff was deemed to have abandoned his position, Kurz–Hastings accommodated the needs of other employees by either allowing them to remain on medical leave until they were medically able to return to their previous duties or by granting their request for changes in shift or job classification. Many of these accommodations by Kurz–Hastings for its employees resulted from the Union's active, informal negotiations with the company, outside the parameters of the collective bargaining agreement. As plaintiff stated, "[T]he Teamsters manifested an ability to extract, for certain employees, concessions from Kurz–Hastings which were not mandated by or even consistent with the contract." *Plaintiff's*

*Memorandum in Opposition to Defendant's Motion for Summary Judgment,* at 28. The employees who were accommodated by Kurz–Hastings as a result of the Union's intervention, had not opposed past Union practices or Union representatives. Plaintiff, for whom no accomodation was made by Kurz–Hastings and for whom the Union did not actively intervene, had, for a number of years, actively opposed Union personnel and proceedings.

As previously stated, plaintiff filed the instant action on September 4, 1987. Three months later, the Union processed plaintiff's grievance and filed a demand for arbitration. Despite the fact that the grievance was untimely, Kurz–Hastings agreed to proceed to arbitration. A hearing was held before an arbitrator on February 3, 1988, at which plaintiff was represented by the Union. The Union introduced evidence of Kurz–Hastings' past practice concerning the accomodations of employees in situations roughly comparable to that of plaintiff. The arbtirator's decision, which followed a careful and accurate description of the factual background to this dispute, was to uphold plaintiff's termination on the ground that there was no violation of the collective bargaining agreement.

### III.

Plaintiff's cause of action is grounded on Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). As stated by the Supreme Court in *Hines v. Anchor Motor Freight,* Section 301(a) provides a federal cause of action for suits by individual employees to enforce their individual rights under a collective bargaining agreement:

> Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate "uniquely personal" rights of employees such as wages, hours, overtime pay, and wrongful discharge.

424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *see also Smith v. Evening News Association,* 371 U.S. 195, 198–200, 83 S.Ct. 267, 269–70, 9 L.Ed.2d 246 (1962). Ordinarily, however, an employee is required to attempt to exhaust all grievance/arbitration procedures provided in the collective bargaining agreement. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). Subject to very limited judicial review, the employee will be bound by the result according to the finality provisions of the agreement. *See W.R. Grace Co. v. Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed. 2d 298 (1983).

The Supreme Court, however, has recognized that the aforementioned rule would work an unacceptable injustice in those instances where the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914–915, 17 L.Ed.2d 842 (1967); *Hines v. Anchor Motor Freight,* 424 U.S. at 564–65, 96 S.Ct. at 1056–57. Accordingly, the Supreme Court, in recognition of the intricate relationship between the enforcement of a collective bargaining agreement and a duty of fair representation, has found that the express statutory grant by jurisdiction to adjudicate alleged breaches by employers of the collective bargaining agreement necessarily includes jurisdiction to adjudicate alleged breaches of the union's duty of fair representation. *Vaca v. Sipes,* 386 U.S. at 186, 87 S.Ct. at 914–15; *Hines v. Anchor Motor Freight,* 424 U.S. at 564–65, 96 S.Ct. at 1056–57; *United Parcel Services, Inc. v. Mitchell,* 451 U.S. 56, 62–63, 101 S.Ct. 1559, 1563–64, 67 L.Ed. 2d 732 (1981). Indeed, as the Supreme Court held in *DelCostello v. International Brotherhood of Teamsters,* under such circumstances:

> [A]n employee may bring suit against both the employer and the union, notwithstanding the outcome of the finality of the grievance or arbitration proceeding.

462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).

The Supreme Court, in *DelCostello*, styled such an action as a "hybrid § 301/fair representation claim." *Id.* at 165, 103 S.Ct. at 2291. In *Hines v. Anchor Motor Freight*, the Supreme Court set forth the elements of a hybrid § 301/fair representation claim:

[T]o prevail against either the company or the union, petitioners must not only show that their discharge was contrary to the contract, but also carry the burden of demonstrating breach of duty by the union.

424 U.S. at 570–71, 96 S.Ct. at 1059. Similarly, in *DelCostello*, the Supreme Court stated:

[A hybrid § 301/fair representation claim], as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation.... Yet the two claims are inextricably interdependent. 'To prevail against either the company or the union ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the union.' The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.

462 U.S. at 164–165, 103 S.Ct. at 2290–91.

The Third Circuit has assumed that a plaintiff must establish both a breach of the union's duty of fair representation and a company's breach of the collective bargaining agreement in order to succeed against either defendant in a hybrid § 301 cause of action. *See Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 87 (3d Cir.1982); *Findley v. Jones Motor Freight*,

639 F.2d 953, 957–58 (3d Cir.1981).[1] Indeed, the Third Circuit, in *Findley* stated:

At trial, the employee must demonstrate that he did not receive fair representation from the union as well as proving his claim against the employer. These two elements must be established before the employee is entitled to relief under § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

639 F.2d at 957–58.

■ Based upon the unequivocal statements by the Supreme Court and the equally forceful opinions expressed by our Circuit, we hold that an employee plaintiff in a hybrid § 301 fair representation cause of action is required to prove both the union's breach of duty of fair representation and the company's breach of the collective bargaining agreement. Thus, the liability of both the union and the company depends upon finding that the union's breach occurred with respect to a legitimate, meritorious grievance.

### IV.

■ After a careful review of the entire record in this case, the court concludes that inasmuch as defendant Union has met its burden of proving the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law, summary judgment as to the § 301 cause of action will be entered against plaintiff in favor of both defendants Kurz–Hastings and Union. Specifically, we find, based on the record developed, that the plaintiff has failed to come forward with any factual evidence whatsoever in support of the requisite first element of this hybrid § 301 cause of action, to wit, that defendant Kurz–Hastings breached any provision of its collective bargaining agreement.

In his opposition to defendant Union's motion for summary judgment, plaintiff fails to cite to or identify any provision of

1. In *Bygott v. Leaseway Transportation Corp.*, —— F.2d —— Nos. 86–1456 and 86–1027 (3rd Cir. June 25, 1987), a panel of the Third Circuit in a 2–1 decision held that inadequate representation by a union does not constitute a breach of legal duty unless it occurs with respect to a meritorious grievance. A rehearing *en banc* was granted. Pursuant to Third Circuit Internal Operating Procedures 1X, B, 4, d, the panel opinion was vacated on July 27, 1987. The rehearing, itself, has been stayed because of the union's petition in bankruptcy. The panel opinion may, therefore, have no precedential value in and of itself.

the collective bargaining agreement allegedly violated by defendant Kurz–Hastings. Rather, plaintiff argues that defendant "breached" its collective bargaining agreement by either not offering to extend his medical leave or by not making the special accommodations for him that it had made for other employees:

> [The Company] breached the contract because it discriminated against plaintiff by requiring him to work or be terminated rather than offering him to opportunity to extend his medical leave. Discrimination in violation of the contract is also evidenced by the refusal to accommodate his request for a change in shift or job classification as Kurz–Hastings had done to accommodate the special needs of other employees. The claim of breach of contract is also founded in the fact Kurz–Hastings' past practice with regard to extended medical leave was violated when plaintiff was required to return to work immediately.

Plaintiff's Memorandum, p. 18. However, the plaintiff failed to identify any clause or provision of the collective bargaining agreement that obligated defendant Kurz–Hastings to provide him with a straight shift position, to reclassify his position, to make limited duty work available, to extend his medical leave, or to continue to provide any past accommodations not required by the agreement. While it may well be that defendant Kurz–Hastings refused to reach an extra-contractual arrangement or accommodation with plaintiff as it had with other employees, that does not constitute a breach of the collective bargaining agreement.

We further note that the arbitrator's award in the instant case concluded that there was no evidence that defendant Kurz–Hastings had breached any provision of its collective bargaining agreement.

It is, of course, well established that once an arbitration award has been rendered pursuant to a collective bargaining agreement, the scope of judicial review of that award is very limited. Indeed, the federal policy in favor of settling labor disputes by arbitration requires the courts refrain from reviewing the merits of labor arbitrator's award. *See Steelworkers Trilogy: United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior and Gulf Narrigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Similarly, the Third Circuit, in *Ludwig Honold Mfg. Co. v. Fletcher* held:

> It is not within the province of a reviewing court to agree or disagree with the conclusions reached or with the specific reasoning employed. Our sole function is to decide whether the arbitrator's interpretation met the tests which the courts must apply in exercising the limited function of review in cases arising from labor arbitration.

405 F.2d 1123, 1132 (3d Cir.1969). Thus, a court reviewing an arbitrator's award "may only determine whether the arbitrator's award was totally unsupported by principles of contract construction." *Arco–Polymers, Inc. v. Local 8–74,* 671 F.2d 752, 755 (3d Cir.1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982); *see also Super Tire Engineering Co. v. Teamsters Local Union No. 676,* 721 F.2d 121, 123 (3d Cir.1983). Recently, the Supreme Court, in *United Paperworkers v. Misco,* again reiterated that courts are prohibited from second-guessing the arbitrators fact-finding contract interpretation "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." 484 U.S. 29, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987).

A review of the arbitrator's award in the instant case reveals a complete and detailed examination of each provision of the collective bargaining agreement alleged to have been breached by Kurz–Hastings. First, the Arbitrator rejected plaintiff-grievant's contention that the Company had failed to post straight-shift job openings during the first quarter of 1987 in violation of Article XVIII, Sections 8 and 11 of the collective bargaining agreement, finding, instead,

that the evidence was that there were no straight shift job openings during that period. Second, the Arbitrator rejected plaintiff-grievant's contention that the Company's refusal to allow him to bump into a straight-shift job violated Section 15 of Article XVIII. The Arbitrator noted that Section 15 of Article XVIII "specifically limits bumping to situations involving layoffs due to lack of work." Moreover, the Arbitrator concluded not only that Section 6 of Article XVIII precluded the transfer/assignment requested by the plaintiff for having abandoned his job pursuant to Article XVIII, Section 7, E of the collective bargaining agreement. Finally, the Arbitrator rejected the contention that the grievant had been contractually discriminated against when compared to other employees.

We find, therefore, that the Arbitrator based his award on a rational construction and application of the collective bargaining agreement and that the Arbitrator acted within the scope of his authority. We also reject plaintiff's contentions that the Union breached its duty by perfunctorily processing plaintiff's grievance, and that the arbitration award should be set aside.

The burden imposed by the Supreme Court on employees who collaterally attack an arbitrator's award by alleging unfair representation by the Union is a heavy one:

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith.

*Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916. When, as in the instant case, the union has exhausted all available grievance procedures, a breach of duty is not established by "demonstrating mere errors in judgment" for "[t]he grievance process cannot be expected to be error-free. The finality provision has sufficient force to surmount occasional instances of mistake." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 571, 96 S.Ct. at 1059. In *Vaca v. Sipes*, the Supreme Court stated that the plaintiff had to prove that the union processed his grievance "in perfunctory fashion". 386 U.S. at 191, 87 S.Ct. at 917. The

Third Circuit has observed that "[m]ere ineptitude on negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'" *Findley v. Jones Motor Freight*, 639 F.2d at 960, n. 2. *See also Riley v. Letter Carriers Local No. 380*, 668 F.2d 224, 228 (3d Cir.1981).

Accordingly, an award may only be set aside if a union's breach of its duty "seriously undermines the integrity of the arbitral process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 567, 96 S.Ct. at 1058. The focus in such a case is "on whether, contrary to the arbitrator's decision, the employer did breach the contract and on whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings." *Id.* at 568, 96 S.Ct. at 1058.

Plaintiff's claim that the Union breached its duty in handling his arbitration case is based exclusively on the failure of the Union to present complete evidence on the issue of Kurz–Hasting's extra-contractual accommodation of other employees in situations roughly similar to that of plaintiff. We reject plaintiff's contention for three reasons. First, a review of the transcript of the arbitration hearings clearly reveals that the Union presented substantial evidence of the company's past accommodations to its employees. Second, as plaintiff concedes, much of the information allegedly "withheld" by the Union during the arbitration hearing, was only developed by pre-trial discovery not available in the arbitration process. Third, and most importantly, the evidence allegedly withheld, does not address or support a breach of a provision of the collective bargaining agreement. Thus, we find that the Union's failure to present certain evidence to the Arbitrator neither constituted a prefunctory processing of the grievance nor contributed to an erroneous outcome of the arbitration proceedings.

Thus, we conclude, based on a review of the entire record, including the arbitration hearing and award, that plaintiff failed to come forward with any factual evidence in

support of the requisite first element of this hybrid § 301 cause of action, to wit, that defendant Kurz–Hastings breached the collective bargaining agreement. Because plaintiff can only prevail against either defendant Kurz–Hastings or defendant Union by proving a breach of the collective bargaining agreement, this Court will enter summary judgment on Counts I and II of plaintiff's amended Complaint (the hybrid § 301 claims against defendants Kurz–Hastings and Union).

In entering summary judgment against plaintiff Carlos Matos in favor of defendants Kurz–Hastings and Union, we do not determine the propriety of the conduct allegedly engaged in by defendants. It may well be that the conduct involved would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 562, 96 S.Ct. at 1055. Such a cause of action is, of course, not before this Court.

## V.

Inasmuch as this Court will enter summary judgment in favor of defendants as to the federal causes of action as set forth in Counts I and II of plaintiff's amended complaint, this Court declines to exercise pendent jurisdiction over the remaining state claims of intentional infliction of emotional distress as set forth in Counts III and IV. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, Counts III and IV of plaintiff's amended complaint will be dismissed without prejudice to plaintiff's right to transfer these claims to the state court pursuant to the transfer provisions of 42 Pa.Cons.Stat.Ann. § 5103(b).

Also pending before this Court is plaintiff's motion for leave to file a second amended complaint to include an additional state claim that defendants violated the Pennsylvania Human Relations Act, 43 P.S. § 955(b)(5). As previously stated, we are granting summary judgment in favor of defendants as to the federal causes of action and, on the basis of *Gibbs*, declining to exercise jurisdiction over the pendent state claims contained in plaintiff's amended complaint. Accordingly, we will deny plaintiff's motion for leave to file a second amended complaint without prejudice to plaintiff amending his complaint after it has been transferred to state court.

## ORDER

AND NOW, this 14th day of December, 1988, for the reasons set forth in this Court's Memorandum of December 14, 1988,

IT IS ORDERED that summary judgment on COUNT I is entered against plaintiff Carlos Matos and in favor of defendant Teamsters Union Local 115; and

IT IS FURTHER ORDERED that summary judgment on COUNT II is entered against plaintiff Carlos Matos and in favor of defendant Kurz–Hastings, Inc.; and

IT IS FURTHER ORDERED that COUNTS III and IV are DISMISSED WITHOUT PREJUDICE to the plaintiff's right to transfer these state claims to state court pursuant to the transfer provisions of 42 Pa.Cons.Stat.Ann. § 5103(b); and

IT IS FURTHER ORDERED that plaintiff's Motion for Leave to File a Second Amended Complaint is DENIED WITHOUT PREJUDICE to plaintiff amending his complaint after it has been transferred to state court.