Robert WRIGHT

v.

BOEING VERTOL COMPANY.

No. 87–0130.

United States District Court,
E.D. Pennsylvania.

Jan. 13, 1989.

Eric A. Weiss, Liebert, Short, Fitzpatrick & Hirshland, Philadelphia, Pa., for plaintiff.

Jerome A. Hoffman, Philadelphia, Pa., Marie L. Martino, for Boeing Vertol Co.

Paula R. Markowitz, Philadelphia, Pa., Richard H. Markowitz, for Intern. Union UAW & Local 1069.

David Shank, Bellevue, Wash., for UAW Local 1069.

## MEMORANDUM

O'NEILL, District Judge.

In this action, brought under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1982), plaintiff Robert Wright seeks to overturn a labor arbitration award sustaining plaintiff's discharge by defendant Boeing Vertol Company ("Boeing"). Plaintiff alleges that Boeing discharged him in violation of its collective bargaining agreement with the International Union, United Automobile Aerospace and Agricultural Implement Workers of America ("UAW") and Local 1069 of the UAW, that the UAW and Local 1069 breached their duty of fair representation of plaintiff, and that Boeing, the UAW and Local 1069 conspired to terminate him. Boeing has moved for summary judgment on Counts II and III of plaintiff's complaint.[1]

### Background

Except for a brief period in 1964, plaintiff was employed by Boeing continuously from October 8, 1962 until March 31, 1986 as a production and maintenance worker. From shortly after he began work at Boeing, plaintiff was a member of, and represented by, the UAW and Local 1069, and the terms and conditions of his employment were governed by a series of collective bargaining agreements between the UAW, Local 1069 and Boeing. Plaintiff has held a number of positions within Local 1069, including Vice President from July 1985 to June 1987, and President from June 1987 to the present date.

During his term as Vice President, plaintiff served as a member of the Local 1069 shop committee. His duties at work included adjustment of complaints and grievances arising under the collective bargaining agreement with Boeing. Members of the shop committee were assigned to work from 9:00 a.m. to 5:30 p.m., including an unpaid 30 minute lunch period. Like other Boeing production employees, plaintiff was required to record his times of arrival and departure each day on Boeing's computerized data collection system.

On March 24, 1986, plaintiff left the Boeing plant at approximately 4:30 p.m. to attend a fellow worker's retirement party at a local bar and restaurant.[2] After

---

**1.** Plaintiff's complaint contains four Counts: Count I alleges breach of duty of fair representation by the UAW and Local 1069; Count II, violation of the collective bargaining agreement and 29 U.S.C. § 141 *et seq.* by Boeing; Count III, conspiracy by Boeing, the UAW and Local 1069 to terminate plaintiff; and Count IV, intentional infliction of emotional distress by Boeing, the UAW and Local 1069. Plaintiff has settled his claims against the UAW and Local 1069 by accepting their offer of judgment under Fed.R. Civ.P. Rule 68 for one dollar. This Court approved entry of judgment on these claims on

August 14, 1987. In addition, on June 16, 1988, plaintiff voluntarily dismissed Count IV by stipulation. As a result, only the claims against Boeing contained in Counts II and III await resolution.

**2.** Plaintiff contends that he arrived at work at 8:45 a.m. on March 24, 1986, and did not take a lunch break, thus working only 15 minutes less than required. Boeing, for its part, alleges that plaintiff left the Boeing plant no later than 4:15 p.m., and that he did not have discretion to take his lunch period at any time he wished during

spending approximately two hours at the retirement party, plaintiff returned to work, and clocked out at 6:43 p.m.. One week later, in a meeting attended by Local 1069 and Boeing officials, plaintiff was informed that he was suspended from work for his actions on March 24. The following day, April 1, 1986, Boeing sent plaintiff and Local 1069 official notice that he had been terminated for "violation of company rules: misuse of company time and falsification of time records." [3]

On April 2, Local 1069 filed a grievance alleging that plaintiff's discharge was "unjust and unfair," and demanding that he be reinstated immediately. In accordance with the collective bargaining agreement, a Boeing Discharge Board of Review hearing was held on April 3 to consider Local 1069's grievance. Plaintiff was represented at this hearing by James Donahue, the UAW International Representative assigned to Local 1069. The Board received evidence from both sides, including testimony by plaintiff and a presentation by Donahue. Boeing notified Local 1069 on April 10 of the Board's determination that there was just cause for plaintiff's discharge. That same day, Local 1069 appealed Boeing's determination to arbitration, in accordance with the collective bargaining agreement.

Donahue and Local 1069 shop committee chairman John Newborg prepared plaintiff's arbitration case on behalf of Local 1069. The arbitration hearing was held on July 7 before Joseph M. Stone. Stone heard testimony from plaintiff, Newborg and Local 1069 President Edmund Ciammaichelli, as well as argument by Donahue, and evidence and argument from Boeing. Both sides also submitted post-hearing briefs. On September 26, Stone issued his decision denying Local 1069's grievance. He found that plaintiff's discharge was in accordance with the collective bargaining agreement because plaintiff's conduct

> constituted "tinkering" with the Company's time reporting system and such conduct warranted discharge since employees realize on the basis of past arbitrations and discharge actions by the Company that such "tinkering" with the Company's time reporting system results in discharge.[4]

*Discussion*

Under Fed.R.Civ.P. Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has held that the Rule mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The collective bargaining agreement between Boeing and Local 1069 provides that for grievances submitted to arbitration, "[t]he decision of the arbitrator shall be final and binding upon all employees, the Company, and the Union." [5] In Count II of his complaint, plaintiff attempts to avoid this finality provision by alleging a hybrid § 301/fair representation claim. To prevail on such a claim, plaintiff must show not only that his discharge was not in accord with the collective bargaining agreement, but also that there was a "breach of duty [of fair representation] by the Union." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983) (quoting

---

the day. Under either version, plaintiff left the Boeing plant before he had completed his work day, and later returned to clock out. *See infra*, pp. 80–81.

**3.** Exhibit 3, Appendix to Response of Plaintiff, Robert Wright, to Motion of Defendant for Summary Judgment.

**4.** Exhibit 47, Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 18.

**5.** Exhibit 13, Appendix to Response of Plaintiff, Robert Wright, to Motion of Defendant for Summary Judgment, at 33.

Justice Stewart's concurrence in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66–67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981)); *see Findley v. Jones Motor Freight,* 639 F.2d 953, 958 (3d Cir.1981) ("[A]n employee's claim against his employer for wrongful discharge may be meritorious, but he nevertheless cannot prevail in a federal court action unless he establishes a lack of fair representation.") On the record before me, I conclude that plaintiff has failed to make a showing sufficient to establish the existence of a breach of duty of fair representation by the UAW or Local 1069.

 A union breaches its duty of fair representation only when its "conduct toward a member of the collective bargaining unity is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). A union may not process a member's grievance "in perfunctory fashion." *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *Riley v. Letter Carriers Local No. 380,* 668 F.2d 224, 228 (3d Cir.1981). But to establish that a grievance was processed in perfunctory fashion, "it is not enough for a member of the collective bargaining unit to show that the union committed a mistake in the prosecution of a grievance, nor is it sufficient to show negligence or poor judgment on the union's part." *Bellesfield v. RCA Communications, Inc.,* 675 F.Supp. 952, 955–956 (D.N.J.1987) (citations omitted). Rather, "[w]hat is required is a showing of actual bad faith or arbitrary conduct." *Riley,* 668 F.2d at 228.

 The record in this case shows that plaintiff's arbitration case was given careful attention by the UAW and Local 1069.[6] It is uncontroverted that Donahue and Newborg undertook extensive preparations for the arbitration hearing, including: can-

vassing and analyzing past arbitration decisions regarding alleged falsification of time records by Boeing employees; researching and evaluating plaintiff's contention that other workers who had left the plant and returned to clock out had been merely suspended, not discharged; investigating the events of March 24, including searching for witnesses to corroborate plaintiff's version of what happened on that day; and spending two full working days, including one with plaintiff, preparing for their hearing presentation.

It is also uncontroverted that Donahue presented a number of defenses to the arbitrator, including evidence and/or argument that: plaintiff had worked eight full hours on March 24; plaintiff had intended to stay at the retirement party for only one-half hour, but stayed longer because he was inundated with questions about union business; plaintiff's attendance at the party was an extension of his responsibilities as a union official, and he deserved additional latitude as a union official; although aware of his attendance at a previous retirement party during his work day, Boeing never notified plaintiff that such behavior was improper; plaintiff's only offense, if any, was mere misuse of time, not falsification; and Boeing had discharged him in retaliation for his filing three grievances which were particularly "sensitive" to Boeing. In addition, Donahue cross-examined witnesses presented by Boeing at the arbitration hearing.

Donahue and Newborg also collaborated on the postarbitration brief submitted by the UAW and Local 1069 on plaintiff's behalf. In preparing the brief, Newborg spoke to Steward McDevitt in an unsuccessful attempt to corroborate plaintiff's account of what he did at the Boeing plant after returning from the retirement party on March 24. Donahue spent approximate-

---

**6.** The allegations concerning breach of duty of fair representation in plaintiff's complaint (as well as in his memoranda opposing the present motion) concern representation at the arbitration hearing, not at the Discharge Board of Review hearing. *See* Complaint, at ¶ 51 (alleging "defendants' refusal to permit the plaintiff to be represented by legal counsel at the arbitration hearing, and the defendants' refusal to

present relevant and significant evidence and witnesses at the arbitration hearing all of which affected the outcome of said arbitration.") Moreover, plaintiff stated in his deposition that he thought Donahue had done his best in representing plaintiff before the Board of Review. Exhibit 23, Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment.

ly ten hours reviewing arbitrators' decisions to determine which arguments might be most effective. Donahue and Newborg revised and rewrote the brief a number of times before submitting it.

■ Plaintiff's primary contention is that Donahue and Newborg failed to introduce evidence at the arbitration hearing about the exception report generated by plaintiff's late clock out on March 24.[7] According to plaintiff, the fact that plaintiff generated an exception report establishes that he did not "tinker" with Boeing's time reporting system; thus, he argues, evidence of the exception report, if presented to the arbitrator, would have led to plaintiff's reinstatement.

It is true that an omission by a union may prove inadequate presentation of a grievance if there is "a demonstration that the omission damaged the grievance presentation." *Findley*, 639 F.2d at 959 (citing *Hines v. Anchor Motor Freight*, 424 U.S. 554, 568, 96 S.Ct. 1048, 1058, 47 L.Ed. 2d 231 (1976)). But it is doubtful that introduction of evidence regarding the exception report would have led the arbitrator to reinstate plaintiff. Exception reports are merely signals generated by Boeing's data collection system to draw attention to possible instances of falsification of time records. The fact that the computer system's automatic printout indicated that plaintiff had clocked out late is immaterial to what the arbitrator correctly referred to as the "crucial question," that is, "whether the late clock-out under all of the circumstances was improper in that it was designed to enable [plaintiff] to be paid for time that he did not work."[8] Even under plaintiff's version of events on March 24, he did not clock out when he left the Boeing plant for the retirement party at 4:30, but rather upon returning from the retire-

ment party, over two hours later. Plaintiff had not completed his assigned shift when he left the Boeing plant for the party, but clocking out at 6:43 enabled him to be paid for a full work day, and therefore, enabled him to be paid for time that he did not work.

Moreover, even if introduction of evidence concerning the exception report would have produced a different result at arbitration, Donahue and Newborg's failure to introduce it was no more than mere negligence. As the *Findley* court noted, "[m]ere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'" *Findley*, 639 F.2d at 960, n. 2. The duty of fair representation does not "hold lay union representatives to the demanding tests applied to a trained trial lawyer." *Findley*, 639 F.2d at 958. Thus, "[i]f the [arbitrator] had the essential facts before it, a decision adverse to the employee does not establish a breach of the duty of fair representation, even if a court would have come to a different conclusion in passing on the merits of the grievance." *Findley*, 639 F.2d at 961.

In his complaint, plaintiff also alleges that several other actions by the UAW and Local 1069 constituted breaches of their duty of fair representation: denial of plaintiff's request for representation by an attorney hired by himself or by the UAW or Local 1069; advice to plaintiff to remain silent at the March 31 suspension hearing; and Newborg and Donahue's failure to call a number of additional witnesses before the arbitrator, including Steward McDevitt, other committeemen, and employees affected by the "sensitive" grievances filed by plaintiff.

---

**7.** An exception report is a report generated automatically by Boeing's data collection system listing, for a given day, all employees who had clocked in more than 48 minutes before or any time after the start of their assigned shift, clocked out at any time before or more than 29 minutes after the end of their assigned shift, or failed to clock in or out at all. Boeing payroll coordinators and supervisors receive the exception reports and investigate to discover whether

overtime should be paid, and whether disciplinary action should be taken. *See* Exhibit 12, Appendix to Response of Plaintiff to Motion of Defendant for Summary Judgment.

**8.** Exhibit 47, Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 16.

 But plaintiff's allegations are without merit. As the Court of Appeals for the Ninth Circuit has stated, "no court has adopted the rule that employees are entitled to independently retained counsel in arbitration proceedings, or that the exclusion of such attorneys from arbitration violates the duty of fair representation." *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir.1985). The advice to plaintiff to remain silent at the March 31 hearing seems to have been reasonable and, in any event, was not prejudicial, since plaintiff presented his story in his own words before the Board of Review and the arbitrator. *See Stevens v. Highway, City & Air Freight Drivers*, 794 F.2d 376, 377 (8th Cir.1986) (stating that "advice to plaintiff not to speak unless spoken to could well have been proper strategy.") Finally, there is no evidence to support plaintiff's claim that the additional witnesses he identifies would have changed the result at arbitration. Newborg and Donahue's choice of witnesses was reasonable and did not rise to the level of negligence, much less constitute "perfunctory" processing of plaintiff's claim.

In Count III of his complaint, plaintiff alleges that Boeing, the UAW and Local 1069 conspired to terminate him, particularly in a meeting on March 28, 1986, between Boeing Labor Relations Manager Al Mansi, Ciammaichelli, Newborg, and Local 1069 Financial Secretary/Treasurer Robert Methvin. Plaintiff describes in great detail previous political battles he has had with other officials of Local 1069,[9] as well as grievances he filed on behalf of Local 1069 which he believes were particularly "sensitive" to Boeing.[10] But the only facts he alleges regarding the "conspiracy" are that Mansi told Ciammaichelli, Newborg and Methvin on March 28 that there was evidence plaintiff had attended a retirement party "off the clock", and that Ciammaichelli, Newborg and Methvin did not inform plaintiff of what Mansi had told them until just before the March 31 meeting.[11]

In their deposition testimony and/or affidavits, Mansi, Newborg and Methvin all state that the members of Local 1069 had nothing to do with the decision to terminate plaintiff, and that the union members did not make any suggestions or statements regarding what action should be taken against plaintiff at the March 28 meeting.[12] As in *Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354 (8th Cir.1984), these statements denying any union involvement or collusion are "sufficient to put the burden on plaintiff to come forward with admissible evidence from which a reasonable finder of fact could find collusion. Plaintiff [has] failed to come forward with any such evidence." *Brown*, 746 F.2d at 1360.

Boeing's motion for summary judgment as to Counts II and III of plaintiff's complaint will be granted. Boeing's motion to limit damages and strike jury trial demand will be denied as moot.

---

9. *See* Memorandum of Law in Support of the Response of Plaintiff to the Motion of Defendant for Summary Judgment, at 2–10.

10. *Id.* at 20–26.

11. *Id.* at 67–72.

12. *See* Exhibits 9 and 64, Appendix to Memorandum of Law in Support of Defendant's Motion for Summary Judgment.