NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4322
_____

JOHN GEHRINGER; JUAN C. AYALA; PATRICK BROWN;
JEAN DANIEL CHALMERS; SCOTT M. CURRY;
DENNIS GALLOWAY; JAMES GNARDELLIS;
TIMOTHY J. KOGIT; CLIFF NOVINS;
GARY P. SCHAFFNER, JR.; FRANTZ ST VIL

v.

ATLANTIC DETROIT DIESEL ALLISON LLC;
INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 15C

Jean Daniel Chalmers; Dennis Galloway; Timothy J. Kogit,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-08-cv-03917)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2014

Before: AMBRO, CHAGARES, and VANASKIE, *Circuit Judges*

(Filed: December 11, 2014)
_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge*.

Appellants Dennis Galloway and Timothy Kogit are among the plaintiffs who filed this hybrid action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), against their union, Appellee Local 15C of the International Union of Operating Engineers (Local 15C), and their former employer, Appellee Atlantic Detroit Diesel Alison, LLC (ADDA).[1] Galloway and Kogit contend that ADDA breached the collective bargaining agreement between Local 15C and ADDA by firing them without cause, and that Local 15C violated its duty of fair representation by failing to pursue a grievance on their behalf. The District Court, finding that the record contained no evidence of bad faith or arbitrary action on the part of Local 15C, granted summary judgment in favor of Local 15C. And because "[a] breach of the duty of fair representation is a 'necessary condition precedent'" to the claim against the employer under these circumstances, *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001), the Court also granted summary

---

[1] Eleven members of Local 15C participated in the lawsuit as plaintiffs. Of those, Galloway, Kogit, and Jean Daniel Chalmers filed a joint notice of appeal from the District Court's order granting summary judgment. (App. 1.) Leonard Z. Kaufmann, Esq., who initially entered an appearance on behalf of Galloway, Kogit, and Chalmers, has informed us that his firm no longer represents Chalmers. Likewise, the opening brief filed by Kaufmann declares that "[o]nly Dennis Galloway and Timothy Kogit have filed the within appeal." Appellants' Br. at 3 n.1. Consequently, because Chalmers has "failed to file a brief in support of the instant appeal," we will summarily dismiss his appeal under L.A.R. 107.2.

2

judgment in favor of ADDA. We will affirm the District Court's order granting summary judgment on both counts.

I.

Galloway and Kogit were among fifteen mechanics fired by ADDA in connection with allegations of significant overbilling on a large-scale school-bus repair project. The terms of the mechanics' employment were set out in both the collective bargaining agreement and an ADDA employee handbook. Under the terms of the documents, ADDA was obligated to pay the mechanics based on hours actually worked, which in some instances included time in transit and overtime.

In early 2007, ADDA entered into a contract with the New York City Department of Education (DOE) to service a large number of school buses, with a completion date of September 1, 2007. Each morning, the mechanics assigned to the project traveled in GPS-enabled vans from an ADDA site to DOE facilities, and returned to the ADDA site in the same vans at the end of their workday. The collective bargaining agreement required all mechanics to report their departure and return times on signed time cards, the accuracy of which could be verified by reference to the vans' GPS records.

In the summer of 2007, ADDA agreed to an expansion of its contract with DOE, substantially increasing the number of buses to be serviced before September 1. At some point in mid-August, Anthony Cirillo, the ADDA manager responsible for overseeing the DOE project, met with three Local 15C mechanics, John Gehringer, James Van Splinter, and Frantz St. Vil, to discuss the logistics of completing the increased workload by the

3

deadline. According to Gehringer, Cirillo verbally authorized flat-rate billing for the project, under which Gehringer and other mechanics would report that they had worked "eight hours per bus" regardless of how long it took to service any given bus. (App. 2045.) Gehringer claims that when the projected workload increased as detailed above, Cirillo explicitly reiterated that Gehringer and his co-workers should continue billing eight hours per bus and not worry about the GPS tracking system. Gehringer stated at deposition that Cirillo instructed the mechanics to "do whatever it takes, as much overtime as the guys need, whatever you have to do, get the job done, you have 'carte blanche.'" (App. 2057.) Cirillo, although acknowledging meeting with the three union members, disputed Gehringer's assertion that he had authorized the mechanics to report their time on any basis other than hours actually worked.

What is undisputed is that Gehringer and fourteen other ADDA mechanics at some point began filling out their time cards, or allowing other mechanics to fill out time cards on their behalf, in a manner that substantially overrepresented the hours they had actually worked on the DOE project. At deposition, Kogit explained that Gehringer and Van Splinter had relayed Cirillo's purported approval of the flat-rate wage scheme to the rest of the mechanics. Kogit conceded that, as part of this new time-reporting method, he had allowed Van Splinter and Scott Curry, another Local 15C mechanic, to fill out time cards on his behalf in a manner that resulted in "more hours on [his] time card than [he was] actually working." (App. 1361.) Galloway, too, described a situation in which Gehringer

4

and Van Splinter told him about the flat-rate wage scheme, and Van Splinter then filled out Galloway's time cards from that point forward.

In late August, Cirillo observed a van full of Local 15C mechanics returning to the ADDA site at a time when the mechanics should have been working at the DOE site. Soon thereafter he voiced concerns that mechanics were falsifying time records to John Farmer, ADDA's President. Farmer ordered an investigative review, which involved a comparison between the mechanics' time cards, the GPS data from the ADDA vans, and other transit records. The review revealed incontrovertible discrepancies over the two-week period at issue. Kogit, for instance, had actually worked 17.75 fewer hours than the amount stated on his time cards, and Galloway had worked 15.75 fewer hours.

On September 7, Farmer decided to fire the fifteen mechanics in question for falsification of time records. That same day, he called James Callahan, Local 15C's President, and told him about the impending terminations. Timothy Meade, another ADDA executive, also relayed the news to Robert Burns, a Local 15C Business Agent. Burns asked Meade if there was anything that could be done about the terminations. Meade's response was "absolutely not." (App. 2731.)

On September 10 and 11, ADDA management met with each of the fifteen mechanics, accompanied by a Local 15C representative, to inform them of the firings. Shortly thereafter, Callahan and Burns both called and visited Farmer to discuss whether the fired mechanics could somehow be reinstated, but met with no success. Local 15C officers then spoke with their labor counsel, Matthew McGuire, Esq., who advised Burns

5

to request a written explanation from ADDA for the mechanics' dismissal. On October 11, Farmer responded:

> The employees involved were terminated for violation of company policies. More specifically, these individuals engaged in serious misconduct, including without limitation: Time card/Time record violations; Falsification of company records; Willful violation of established policy or rule; Breach of trust or dishonesty; and Theft of time.

(App. 2395.)

Later in October, at Farmer's request, McGuire began a formal investigation into the basis for the terminations. Among those he interviewed was John Ference, a Local 15C Shop Steward, who told McGuire that during the course of the project he had been approached by two ADDA mechanics, Olger Mora and Tom Joyce, who became concerned after they themselves were approached by Kogit and Curry regarding the flat-rate wage scheme. Ference had responded that, "We don't do deals and we go by the contract." (App. 2427.) Ference then confronted Kogit and Curry, who denied the existence of any alternative time-reporting arrangement. McGuire also interviewed Joyce, who essentially confirmed Ference's account.

McGuire next attempted to speak with the fifteen mechanics directly, but only Gehringer and Kogit agreed to the meeting. Gehringer maintained that Cirillo had authorized the flat-rate wage scheme. Kogit explained that he had merely been following what he believed to be legitimate instructions from Gehringer and Van Splinter.

6

Finally, McGuire reviewed documentation forwarded to him by ADDA, including Cirillo's written reports, spreadsheets detailing the discrepancies at issue, and notes from the termination meetings, in which many of the mechanics (although not Galloway or Kogit) had acknowledged the time-card discrepancies. Afterward, in December 2007, McGuire met with Callahan and recommended that Local 15C not file a grievance because Local 15C would not be able to establish that the firings violated the collective bargaining agreement. Callahan adopted McGuire's recommendation and made no further effort to pursue reinstatement of the mechanics with ADDA.

In July 2008, eleven of the fifteen terminated mechanics filed this § 301 suit against both Local 15C and ADDA in New Jersey state court. Local 15C and ADDA removed the action to the District Court. Count One of the First Amended Complaint alleges that Local 15C breached its duty of fair representation by ignoring the plaintiffs' meritorious grievance against ADDA. Count Two alleges that ADDA breached the collective bargaining agreement by summarily terminating the plaintiffs' employment without cause. In a Memorandum and Order entered October 4, 2013, the District Court granted summary judgment in favor of Local 15C and ADDA. Kogit and Galloway filed a timely notice of appeal.[2]

---

[2] The District Court dismissed other counts alleging tortious interference and breach of contract. Galloway and Kogit do not contest that ruling on appeal.

7

## II.

The District Court had jurisdiction under 29 U.S.C. § 185. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's order granting summary judgment is plenary. *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134 (3d Cir. 2013). A grant of summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence "'in the light most favorable to the nonmoving party.'" *Trinity Indus., Inc.*, 735 F.3d at 134–35 (quoting *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir. 2010)).

## III.

To succeed on a claim for breach of the duty of fair representation, a member of the collective bargaining unit must demonstrate that the union's conduct toward that member was "'arbitrary, discriminatory, or in bad faith.'" *Masy v. N.J. Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir. 1986) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). With respect to an alleged grievance against an employer, "'a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.'" *Riley v. Letter Carriers Local No. 380*, 688 F.2d 224, 228 (3d Cir. 1981) (quoting *Vaca*, 386 U.S. at 191). "A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998) (citing *Air Line Pilots v. O'Neill*, 499 U.S. 65, 78–81 (1991)). The plaintiff must demonstrate more than "mere ineptitude or negligence" on the part of

8

the union, and "the fact that trained counsel would have avoided the error or pursued a different strategy is not enough." *Riley*, 688 F.2d at 228 (quotation marks and citations omitted). And it bears noting that a union's foremost duty to advocate on behalf of its members is tempered by "an obligation . . . to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action." *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970).

Here, Galloway and Kogit contend that Local 15C acted arbitrarily or in bad faith when it failed to take aggressive action to prevent the terminations before they occurred; when it conducted a "sham" investigation into the terminations; and when it ultimately declined to file a grievance. In support of this argument, they cite evidence that (1) Callahan and Burns accepted the representation from ADDA management that the terminations were inevitable without first interviewing the implicated mechanics; (2) in some of the termination meetings, the Local 15C representatives were ill-informed or uninvolved; and (3) in the aftermath of the firings, some of the mechanics viewed the tenor of their interactions with Local 15C management as confrontational rather than sympathetic.

These isolated instances of arguably lackluster performance, without significantly more, would not allow a jury to find that Local 15C acted irrationally or in bad faith. The record as a whole demonstrates that Local 15C used the tools at its disposal to conduct a good-faith investigation into the allegations of overbilling. Initially, Callahan and Burns

9

spoke with ADDA management in an effort to forestall or prevent the terminations. When it became clear that ADDA would not be deterred, Callahan ensured that Local 15C representatives would attend the termination meetings. In the aftermath of those meetings, Callahan and Burns again tried, by phone and in person, to convince ADDA management to rescind the terminations. When that too failed, Callahan ordered Local 15C's experienced outside labor counsel to conduct an investigation. Counsel's able assessment, based on a broad spectrum of evidence, was that a grievance was highly unlikely to succeed under the terms of the CBA. There is simply no evidentiary basis on which a jury could find that this investigation was "perfunctory" or a "sham."

Galloway and Kogit also suggest that Local 15C acted in bad faith by failing to credit evidence that they acted in good-faith reliance on Cirillo's representations. They concede, however, that without consulting with Local 15C officers or even their assigned Shop Steward, they both permitted other mechanics to fill out time cards on their behalf in a manner that substantially overrepresented their hours actually worked. There is no reason to believe that their reliance on second-hand representations as to Cirillo's approval of that practice would have been a defense under the collective bargaining agreement or the ADDA employee handbook—both of which reflect an explicit agreement that Local 15C members were to be compensated based upon the accurate, individualized, and personally certified submission of hours actually worked. Neither document provides for compensation on any other basis. Both warn of the possibility of immediate termination based on wage-related violations. In light of that framework,

10

Local 15C reasonably concluded that the terminations were authorized under the collective bargaining agreement regardless of whether the mechanics had a good-faith belief that the flat-rate wage scheme originated with Cirillo.

In sum, we conclude that Galloway and Kogit failed to produce evidence upon which a jury could conclude that Local 15C's conduct was arbitrary or in bad faith. Their claim of breach of the duty of fair representation fails for that reason. And because, as noted above, the employee must first establish a breach of the duty of fair representation by the union before being permitted to bring a direct claim against the employer, *see Albright*, 273 F.3d at 576, the claim against ADDA fails as a matter of law.

IV.

For the foregoing reasons, we will affirm the District Court's order entered October 4, 2013 granting summary judgment in favor of Appellees.